**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| JOHN C. PORTER, Individually and on Behalf of All Others Similarly Situated, | Case No.: 1:24-cv-00154-DCN |
| Plaintiff, | JUDGE DONALD C. NUGENT |
| v. | **CLASS ACTION** |
| GRAFTECH INTERNATIONAL LTD., DAVID RINTOUL, QUINN COBURN, MARCEL KESSLER, TIMOTHY K. FLANAGAN, JEREMY S. HALFORD, BCP IV GRAFTECH HOLDINGS LP, BROOKFIELD CAPITAL PARTNERS LTD., and BROOKFIELD ASSET MANAGEMENT LTD., | |
| Defendants. | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF MUKHTAR OSMAN TO: (1) APPOINT LEAD PLAINTIFF; AND (2) APPROVE LEAD PLAINTIFF'S SELECTION OF COUNSEL**

Movant Mukhtar Osman ("Movant") respectfully submits this memorandum of points and authorities in support of its motion for an Order, pursuant to Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"):

(a) appointing Movant as Lead Plaintiff for the class of all purchasers of the common stock of GrafTech International Ltd. ("GrafTech" or the "Company") between February 8, 2019 and August 3, 2023, both dates inclusive; and

(b) approving Movant's selection of The Rosen Law Firm, P.A. ("Rosen Law") as Lead Counsel for the Class and Karon LLC as Liaison Counsel.

1

## INTRODUCTION AND BACKGROUND

This action was commenced on January 25, 2024 against GrafTech, David Rintoul, Quinn Coburn, Marcel Kessler, Timothy K. Flanagan, Jeremy S. Halford, BCP IV GrafTech Holdings LP, Brookfield Capital Partners Ltd., and Brookfield Asset Management Ltd. for violations under the Exchange Act. That same day, an early notice pursuant to the PSLRA was published advising class members of, among other things, the allegations and claims in the complaint, the Class Period, and advising class members of their option to seek appointment as Lead Plaintiff. *See* Karon Declaration, Ex. 1.

Defendant GrafTech purports to be a global manufacturer of graphite electrode products that are used in the production of electric arc furnace ("EAF") steel – a purportedly greener alternative to traditional steelmaking methods. In contrast to conventional blast furnaces, which rely directly on coal, natural gas, and oil, EAF utilizes graphite electrodes to conduct electricity and to generate sufficient heat to melt scrap metal, iron ore, or other raw materials used to produce steel or other metals. GrafTech's customers are comprised of steel manufacturers that use EAF to produce steel.

The complaint alleges that during the Class Period Defendants made false and misleading statements and/or failed to disclose that: (1) GrafTech's manufacturing operations in Monterrey, Mexico had for decades chronically contaminated neighboring communities with harmful carcinogenic gasses and particulate matter; (2) GrafTech had signed agreements with local authorities committing itself to improving the environmental performance of its Monterrey facility, but repeatedly failed to honor these commitments; (3) GrafTech had been repeatedly warned over an approximately 30-year period regarding its wanton disregard for the environment and health and well-being of people near its operations in Monterrey, Mexico; (4) GrafTech's operations in Monterrey, Mexico were not in compliance with applicable environmental laws

and regulations; (5) GrafTech had failed to adequately remediate the environmental problems caused by the Monterrey facility following the 2019 administrative proceeding conducted by the Department of Sustainable Development of the State of Nuevo León; (6) the government of Apodaca had sought intervention from the State of Nuevo León authorities to curtail and prevent the adverse environmental impacts and noncompliance with environmental laws and regulations caused by the Monterrey facility; (7) GrafTech's purported cost leadership was achieved in substantial part by failing to implement appropriate and effective environmental safeguards at its manufacturing facility in Monterrey, Mexico; (8) GrafTech's capital expenditures and/or related operational projects were woefully insufficient to adequately address the harm that GrafTech's operations in Monterrey, Mexico had inflicted on the environment and people within the neighboring communities; (9) as a result of the above, GrafTech was acutely exposed to undisclosed material risks that GrafTech's manufacturing operations in Monterrey, Mexico would be severely disrupted by government action or enforcement; (10) the suspension of GrafTech's Monterrey facility required the Company to irreparably deplete its critically needed pin stock inventory; (11) due to the non-operation of GrafTech's Monterrey facility, the Company had lost its ability to reliably supply its customers with graphite electrodes; (12) the suspension of activities at GrafTech's Monterrey facility, and/or the uncertainty regarding GrafTech's ability to reliably deliver graphite electrodes, coincided with a critical negotiation window during which the Company was expecting to secure customer commitments for the first half of fiscal 2023; and (13) as a result of the above, GrafTech was acutely exposed to undisclosed material risks that its supplies of pin stock and graphite electrodes would be withdrawn and/or materially diminished, thereby materially harming GrafTech's business, operations, reputation, and financial results.

Then on September 16, 2022, GrafTech filed with the SEC a current report on Form 8-K. The current report revealed that GrafTech's manufacturing facility in Monterrey, Mexico had been ordered to shut down by regulators following a pair of inspections by the State Attorney's office for the Secretary of Environment and the Ministry of the Environment. In the wake of this revelation, multiple Mexican news outlets reported that the cessation order had been made in response to GrafTech's excessive pollution of hazardous carcinogenic gasses and particulate matter into neighboring communities. On this news, the price of GrafTech common stock fell from $5.30 per share on September 16, 2022 to $4.61 per share on September 20, 2022, or approximately 13%, on above-average trading volume.

Then on February 3, 2023, GrafTech issued a press release disclosing the Company's financial and operational results for the fourth quarter and full year ended December 31, 2022 (the "4Q22 Release"). Contrary to prior representations that GrafTech's business performance would only be significantly impacted beyond the fourth quarter of 2022 if the Monterrey facility remained closed, the 4Q22 Release revealed, among other things, that the temporary closure of the Monterrey facility would have a "significant" adverse impact on the Company's business performance in first half of fiscal 2023. In addition, Defendant Kessler explained that the Company's ability to secure customer contracts during key contract negotiation window "was limited" due to the uncertainty surrounding GrafTech's pin stock inventory. On this news, the price of GrafTech common stock fell from $6.59 per share on  February 2, 2023 to $5.58 per share on February 3, 2023, a decline of approximately 15%, on above-average trading volume.

Then on April 28, 2023, GrafTech issued a press release disclosing the Company's financial and operational results for the quarter ended March 31, 2023 ("1Q23 Release"). The 1Q23 Release disclosed that GrafTech sales declined 62% compared to the first quarter of 2022 due to the suspension of operations at GrafTech's Monterrey facilities, causing GrafTech to

4

report a net loss of more than $7 million, down significantly from reported net income of approximately $124 million in the prior year quarter. On this news, the price of GrafTech common stock fell from $4.73 per share on April 27, 2023 to $3.92 per share on May 2, 2023, a decline of approximately 17%, on above-average trading volume.

Then on August 4, 2023, GrafTech issued a press release disclosing the Company's financial and operational results for the quarter ended June 30, 2023 ("2Q23 Release"). The 2Q23 Release reported that sales declined 49% compared to the second quarter of 2022 as the Company continued to "recover" from the effects of the Monterrey facility shutdown in 2022.

On this news, the price of GrafTech common stock fell from $5.23 per share on August 3, 2023 to $4.05 per share on August 4, 2023, or nearly 23%, on above-average trading volume. The price of GrafTech stock has continued to fall thereafter. Ultimately, the price of GrafTech common stock fell 90% from the Class Period high, causing Movant and the Class to suffer hundreds of millions of dollars in losses and economic damages under the federal securities laws.

As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, Movant and other Class members have suffered significant losses and damages.

**ARGUMENT**

## I.     MOVANT SHOULD BE APPOINTED LEAD PLAINTIFF

The PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to a published notice of class action by the later of: (i) 90 days after the date of publication of the notice; or (ii) as soon as practicable after the Court decides any pending motion to consolidate. 15 U.S.C. § 78u-4(a)(3)(B). The PSLRA provides a "rebuttable presumption" that the "most adequate plaintiff" to serve as lead plaintiff is the person or group that:

5

(aa) has either filed the complaint or made a motion in response to a notice…;

(bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii).

As set forth below, Movant satisfies all three of these criteria, and thus is entitled to the presumption of being the "most adequate plaintiff" for the Class.

### A. Movant Is Willing to Serve as Class Representative

Movant has filed herewith a PSLRA certification attesting that he is willing to serve as representative of the class and remains willing to provide testimony at deposition and trial, if necessary. *See* Karon Decl., Ex. 2. Accordingly, Movant satisfies the first requirement to serve as Lead Plaintiff for the Class.

### B. Movant Has the Largest Financial Interest in the Action

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff … is the person or group of persons that … has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii). While the PSLRA does not specify how to decide which plaintiff has the largest financial interest in the relief sought, courts in the Sixth Circuit have determined that the plaintiff with the largest losses has the largest financial interest. *See St. Clair Cty. Employees' Ret. System v. Acadia Healthcare Co., Inc.*, 2019 WL 494129, *3-5 (M.D. Tenn. 2019); *In re Regions Morgan Keegan Closed-End Fund Litig.*, No. 07-02830, 2010 WL 5173851, at *4 (W.D. Tenn. Dec. 15, 2010) (movant with largest loss appointed as

6

lead plaintiff). Of the *Lax*/*Olsten*-styled[1] factors in determining the largest financial interest, the financial loss is the most significant factor. *See St. Clair Cty. Employees' Ret. System,* 2019 WL 494129, *4 ("This Court has forged a middle path by acknowledging the potential relevance of the first three *Olsten-Lax* factors, but giving the fourth factor the greatest weight."); *Blitz v. AgFeed Indus., Inc.,* 2012 WL 1192814, at *7-8 (M.D. Tenn. Apr. 10, 2012). Indeed, "the best yardstick by which to judge 'largest financial interest' is the amount of loss, period." *In re Bally Total Fitness, Sec. Litig.,* 2005 WL 627960 *4 (N.D. Ill. Mar. 15, 2005).

Movant lost approximately $9,265 in connection with his purchases of GrafTech common stock. *See* Karon Decl., Ex. 3. Movant is not aware of any other movant that has suffered greater losses in GrafTech common stock during the Class Period. Accordingly, Movant satisfies the largest financial interest requirement to be appointed as Lead Plaintiff for the class.

## C. Movant Satisfies the Requirements of Rule 23 of the Federal Rules of Civil Procedure

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In making its determination that the Lead Plaintiff satisfies the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class

---

[1] *Lax v. Merch. Acceptance Corp.*, 1997 WL 461036 *5 (N.D. Ill. Aug. 11, 1997); *In re Olsten Corp. Sec. Litig.*, 3 F.Supp.2d 286, 295 (E.D.N.Y. 1998).

certification—a *prima facie* showing that Movant will satisfy the requirements of Rule 23 is sufficient. *Fuwei Films*, 247 F.R.D. at 439 (only a *prima facie* showing is required). Moreover, "typicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA." *In re Oxford Health Plans, Inc. Sec. Litig.,* 182 F.R.D. 42, 49 (S.D.N.Y. 1998).

### 1. Movant's Claims are Typical

The Rule 23(a) typicality requirement is satisfied when a plaintiff's claims arise from the same event, practice or course of conduct that gives rise to other class members' claims and plaintiff's claims are based on the same legal theory. *See In re Livent, Inc. Noteholders Sec. Litig.*, 210 F.R.D. 512, 516 (S.D.N.Y. 2002). Rule 23 does not require the lead plaintiff to be identically situated with all class members. *Id*.

Here, Movant's claims are typical of the claims asserted by the Class. Movant, like all members of the Class, alleges that Defendants violated the Exchange Act by issuing false and misleading statements about GrafTech's business. Movant's interests are closely aligned with the other Class members' and Movant's interests are, therefore, typical of the other members of the Class.

### 2. Movant Is Adequate

The adequacy of representation of Rule 23 is satisfied where it is established that a representative party has the ability to represent the claims of the class vigorously, has obtained adequate counsel, and there is no conflict between a potential representative's claim and those asserted on behalf of the class. *In re Cendant Corp. Litigation*, 264 F.3d. 201, 265 (3d Cir. 2001).

Here, Movant has communicated with competent, experienced counsel concerning this case, and made this motion to be appointed as Lead Plaintiff. Movant is not aware that any

conflict exists between his claims and those asserted on behalf of the Class. Movant also sustained substantial financial losses from investments in GrafTech common stock and is therefore, extremely motivated to pursue claims in this action.

### D. Movant Is Presumptively the Most Adequate Plaintiff

The presumption in favor of appointing Movant as Lead Plaintiff may be rebutted only upon proof "by a purported member of the Plaintiffs' class" that the presumptively most adequate plaintiff:

(aa) will not fairly and adequately protect the interests of the class; or

(bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

The presumption that Movant is the most adequate Lead Plaintiff is not, therefore subject to rebuttal. Accordingly, Movant has suffered financial losses and has the largest financial interest in this case of any timely lead plaintiff.

Further, Movant is 38 years old and has 5 years of investing experience. He is a resident of Alberta, Canada, holds a Bachelor of Science degree, and is a technical sales representative.

### II. MOVANT'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the Lead Plaintiff to select and retain Lead Counsel, subject to the approval of the Court. 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should only interfere with Lead Plaintiff's selection when necessary "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Movant has selected The Rosen Law Firm, P.A. as Lead Counsel. The firm has been actively researching Movant's and Class Plaintiffs' claims, including reviewing publicly available financial and other documents while gathering information in support of the claims

against Defendants. Furthermore, Rosen Law has a long history of successfully litigating securities class actions and has prosecuted securities class actions on behalf of investors and Karon has a long history of handling complex litigation including class actions. *See* Karon Decl., Exs. 4 & 5.

As a result of the firms' experience in litigation involving issues similar to those raised in this action, Movant's counsel has the skill and knowledge to prosecute this action effectively and expeditiously. Thus, the Court may be assured that by approving the Movant's selection of Lead Counsel and Liaison Counsel, the members of the class will receive the best legal representation available.

**CONCLUSION**

For the foregoing reasons, Movant respectfully requests the Court issue an Order; (1) appointing Movant as Lead Plaintiff of the Class; (2) approving Movant's selection of The Rosen Law Firm, P.A. as Lead Counsel and Karon LLC as Liaison Counsel; and (4) granting such other relief as the Court may deem to be just and proper.

Dated: March 25, 2024     Respectfully submitted,

         **KARON LLC**
         By: */s/ Daniel R. Karon*
         Daniel R. Karon (0069304)
         700 W. St. Clair Ave., Ste. 200
         Cleveland, Ohio 44113
         Telephone: (216) 622-1851
         Fax: (216) 241-8175
         Email:  dkaron@karonllc.com

         *[Proposed] Liaison Counsel for Lead Plaintiff*
         *and Class*

**THE ROSEN LAW FIRM, P.A.**
Phillip Kim (*pro hac vice* forthcoming)
Laurence M. Rosen (*pro hac vice* forthcoming)
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
Email: lrosen@rosenlegal.com

*[Proposed] Lead Counsel for Lead Plaintiff
and Class*

**THE SCHALL LAW FIRM**
Brian Schall, Esq.
1880 Century Park East, Suite 404
Los Angeles, CA 90067
Telephone: (424) 303-1964
Email: brian@schallfirm.com

*Additional Counsel for Mukhtar Osman*

11

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 26, 2024, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

*/s/ Daniel R. Karon*