**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| JOHN C. PORTER, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiffs,<br><br>  vs.<br><br>GRAFTECH INTERNATIONAL LTD., DAVID RINTOUL, QUINN COBURN, MARCEL KESSLER, TIMOTHY K. FLANAGAN, JEREMY S. HALFORD, BCP IV GRAFTECH HOLDINGS LP, BROOKFIELD CAPITAL PARTNERS LTD., and BROOKFIELD ASSET MANAGEMENT LTD.,<br><br>    Defendants. | Civil Action No. 1:24-cv-00154-DCN |

**SHEKHAR AGRAWAL'S MEMORANDUM OF LAW IN REPLY TO THE**
**<u>COMPETING LEAD PLAINTIFF MOTION</u>**

## I.    PRELIMINARY STATEMENT

Movant Shekhar Agrawal's motion for appointment as lead plaintiff and approval of selection of counsel should be granted in its entirety (the "Motion"). ECF No. 18. Collectively, Mr. Agrawal, his brother (Jai Agrawal), and the non-profit entity he manages (a Hindu temple and learning center named Arya Samaj Greater Houston or "ASGH") possess the "largest financial interest" in the above-captioned action (the "Action"). Contrary to what is being argued by the University of Puerto Rico Retirement System ("UPR"), there is no reason to disaggregate Mr. Agrawal's losses or otherwise disturb the statutory "lead plaintiff" presumption currently in his favor.

Mr. Agrawal, together with his brother and ASGH, sustained a loss of nearly $1.7 million. Of the $1.7 million loss, Mr. Agrawal individually lost approximately $560,000, his brother lost approximately $1.03 million, and ASGH lost approximately $75,000. Courts routinely appoint groups like Mr. Agrawal's as lead plaintiff, especially when the group members have a pre-existing relationship and one of the group members alone has a larger financial interest than any other competing movant. *See Boynton Beach Firefighters' Pension Fund v. HCP, Inc.*, No. 3:16-cv-1106, 2017 U.S. Dist. LEXIS 195118, at *23-24 (N.D. Ohio Nov. 28, 2017) (discussing PSLRA's application to group lead plaintiff motion). That is the case here. Mr. Agrawal unquestionably has a pre-existing relationship with his brother and ASGH, and his brother's loss of approximately $1.03 million alone is almost twice the $620,000 loss incurred by UPR.

In opposition, UPR misreads Mr. Agrawal's motion as having been filed on his behalf only, thereby necessitating "assignments" from his brother and ASGH if he did not directly sustain losses from Defendants' alleged fraud. Mr. Agrawal, however, clearly and consistently stated throughout his motion papers that he was moving for lead plaintiff "individually and on behalf of

Jai Agrawal and Arya Samaj Greater Houston." *See* ECF No. 18, p. 1 (motion); ECF No. 18-1, p. 1 (memorandum in support); ECF No. 18-2, ¶1 (Declaration of James R. Cummins); ECF No. 18-3, p. 1 (certification); ECF No. 18-6, p. 1 (Declaration of Shekhar Agrawal); ECF No. 18-9, p. 2 (proposed order). Furthermore, UPR's speculation concerning Mr. Agrawal's "standing" is incorrect. He personally lost $560,000 in connection with trades he made in his own accounts, thereby directly conferring him with Article III standing. Thus, UPR has no basis for challenging the lead plaintiff presumption in Mr. Agrawal's favor.

## II.      ARGUMENT

### A.      Shekhar Agrawal, Jai Agrawal, and ASGH Possess the "Largest Financial Interest" in the Litigation.

The PSLRA explicitly provides for courts to "appoint as lead plaintiff the *member or members* of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. §78u-4(a)(3)(B)(i) (emphasis added). Further, "in establishing the criteria for determining the 'most adequate plaintiff,' the Reform Act refers to 'the person *or group of persons*' that meet those criteria." (emphasis added). The court in *Aronson*, just like numerous courts throughout the country, held that a lead plaintiff should be "an individual person or entity, or at most, a close knit 'group of persons,'" noting that an appropriate group might be "members of a family." *Id*. at 1153-54. Courts regularly "aggregate" the financial losses of individuals within a small investor group, especially in instances where the individuals are related or have a relationship that predates the litigation. *See*, *e.g.*, *Beckman v. Ener1, Inc.,* 2012 U.S. Dist. LEXIS 19972, at *12-15 (S.D.N.Y. Feb. 15, 2012) (appointing group consisting of husband and wife lead plaintiff); *In re eSpeed Inc. Sec. Litig.*, 232 F.R.D. 95, 100 (S.D.N.Y. 2005) (allowing family to aggregate losses).

Collectively, Mr. Agrawal, his brother Jai Agrawal, and ASGH lost approximately $1.7 million. The following table specifies their respective losses:

| ASGH (Account 1) | $73,102.46 |
|---|---|
| Jai Agrawal (Accounts 2 and 3) | $1,037,058.79 |
| Shekhar Agrawal (Accounts 4 and 5) | $558,994.49 |
| Total | $1,669,155.74 |

ECF No. 18-4.[1] Their financial interest in the action is indisputably larger than UPR, which claims a loss of approximately $620,000.

UPR does not contest aggregating Mr. Agrawal's losses. *See Boynton Beach Firefighters' Pension Fund*, 2017 U.S. Dist. LEXIS 195118, at *23-25 (aggregating losses of unrelated group movants).[2] Nor could it credibly do so given the relevant case law. For example, in *Bhojwani v. Pistiolis*, No. 06 Civ. 13761 (CM)(KNF), 2007 U.S. Dist. LEXIS 96246 (S.D.N.Y. July 30, 2007), the court aggregated the losses of various family members because the group did not consist of "unrelated parties who came together for the sole purpose of trying to become lead plaintiffs in these lawsuits. They are a man, his wife, his daughter, his son-in-law, and the business owned by his son. The number in the group is small; the relationship among the members is the closest and most natural imaginable; and the nature of the relationship among the group members makes it highly improbable (if not impossible) to conclude that the group was formed in bad faith by an attorney trying to conduct the sort of lawyer-driven litigation that the PSLRA was passed to

---

[1] Mr. Agrawal's Certification included a schedule listing trades in five different accounts. ECF No. 18-3. Account 1 belongs to ASGH; Accounts 2 and 3 belong to Jai Agrawal; and Accounts 4 and 5 belong to Shekhar Agrawal.
[2] UPR's counsel also represented the unrelated group movants in *Boynton Beach Firefighters' Pension Fund*, *supra*.

3

eliminate." *Id*. at *8-9; *see also In re McDermott Int'l, Inc. Secs. Litig.*, No. 08 Civ. 9943 (DC), 2009 U.S. Dist. LEXIS 21539, at *11-12 (S.D.N.Y. Mar. 6, 2009) (family members considered "group of persons" under PLSRA and permitted to serve as lead plaintiffs without need for supplemental evidentiary showing); *Sakhrani v. Brightpoint, Inc.*, 78 F. Supp. 2d 855, 846-47 (S.D. Ind. 1999) ("Such an appointment may be entirely appropriate where the group consists of investors who have prior relationships independent of the lawsuit, such as family members who manage investments jointly, or affiliated pension funds or mutual funds under common management").

Mr. Agrawal and Jai Agrawal are brothers, and Mr. Agrawal is the Treasurer of ASGH. ECF No. 18-6. This group possesses the exact type of pre-litigation relationship that the PSLRA deems appropriate. There should be no question that Mr. Agrawal, Jai Agrawal and ASGH possess the criteria for being considered an investor group, the losses of which should be considered in the aggregate. *See Washtenaw Cty. Employees' Ret. Sys. v. Dollar Gen. Corp.,* No. 3:23-cv-01250, 2024 U.S. Dist. LEXIS 62141, at *7-8 (M.D. Tenn. Apr. 4, 2024) (finding that two institutions "have adequately established their entitlement to being treated as a single plaintiffs group" and "that group has established the highest losses"); *Ansfield v. Omnicare, Inc.*, No. 11-173-DLB-CJS, 2012 U.S. Dist. LEXIS 198236, at *11-12 (E.D. Ky. Mar. 12, 2012) (finding that two institutions could aggregate their losses because they "have a pre-existing relationship" and "were not assembled merely for purposes of this litigation"); *In re Concord EFS, Inc., Sec. Litig.*, No. 02-2697 Ma, 2002 U.S. Dist. LEXIS 29610, at *9 n.1 (W.D. Tenn. Nov. 29, 2002) (aggregating losses from group consisting of father, son, and close friend).

**B.** **UPR's Opposition Is Premised Entirely on the Erroneous Supposition that Mr. Agrawal Did Not Sustain Any Losses.**

UPR must submit "proof" of inadequacy to rebut the lead plaintiff presumption currently in Mr. Agrawal's favor. The case law makes clear that "speculation" is insufficient. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (requiring "proof" to rebut presumption); *Rao v. Quorum Health Corp.,* 221 F. Supp. 3d at 989 (M.D. Tenn. 2016) (the lead plaintiff presumption "may be rebutted only upon proof"). UPR falls far short of meeting that standard; indeed, UPR's entire opposition boils down to the speculative and unfounded assumption that Mr. Agrawal individually did not sustain any losses from trading GrafTech stock and therefore lacks "standing" to serve as the lead plaintiff. ECF No. 29, pp. 2-4. Given UPR's mistaken assumption, its opposition to Mr. Agrawal's motion is meritless.

Mr. Agrawal individually sustained losses from trading GrafTech stock. His opening motion papers confirmed that he transacted in GrafTech stock and sustained losses as a result. *See* ECF No. 18-3, p.1 (certification stating: "***My*** transaction(s) in Graftech International Ltd. . . . are set forth in the chart attached hereto"); *see also* ECF No. 18-6, ¶2 (declaration stating that "I [Mr. Agrawal] . . . invested in GrafTech on behalf of ***myself***, my brother Jai Agrawal, and [ASGH]"). In total, Mr. Agrawal individually lost nearly $560,000 as a result of Defendants' alleged fraudulent conduct.

Given Mr. Agrawal's losses, he has suffered an "injury in fact" and is not subject to any "unique defenses" relating to his standing. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (Article III standing requires (1) an injury in fact, (2) fairly traceable to defendants' actions, that is (3) redressable by the requested relief). In its opposition brief, UPR cites cases where the plaintiffs did not suffer an injury in fact and therefore did not have Article III standing

5

to bring suit. Thus, the cases all address situations in which an "assignment" was necessary for the plaintiff to have "standing." *See W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 104, 111 (2d Cir. 2008) (finding that an investment advisor that brought claims only on behalf of its clients and suffered no injury of its own lacked Article III standing without a valid assignment of its clients' claims); *Friedman v. Quest Energy Partners LP*, 261 F.R.D. 607, 611-12 (W.D. Okla. 2009) (same); *Petrie v. Elec. Game Card*, 308 F.R.D. 336, 346 (C.D. Cal. 2015) (finding that a lead plaintiff lacked Article III standing because he suffered no injury in fact because he had no investment losses of his own).[3]

Here, there is no doubt that Mr. Agrawal has Article III standing, as he asserts claims for losses suffered in his own accounts that are traceable to Defendants' alleged actions and are redressable by the relief requested (*i.e.*, an award of damages under Sections 10(b) and 20(a) of the Exchange Act). Thus, there is no need to qualify for an "exception" to the general rule and/or rely on assignments to pursue the action. This is especially true considering that Mr. Agrawal filed his motion for lead plaintiff "individually and on behalf of Jai Agrawal and Arya Samaj Greater Houston." *See*, *e.g.*, ECF No. 18, p. 1 (motion). Put differently, Mr. Agrawal, Jai Agrawal and ASGH are collectively seeking appointment as lead plaintiff and, therefore, have no need to assign their claims. *See Roby v. Ocean Power Technologies, Inc.*, No. 14-cv-3799 (FLW) (LHG), 2015 U.S. Dist. LEXIS 42388, at *29-33 (D.N.J. Mar. 17, 2015) (rejecting Article III standing argument where lead plaintiff motion was brought in "FiveMore's name" as beneficial owner and investment manager was acting "on behalf of FiveMore"); *Phuong Ho v. NQ Mobile, Inc.*, No. 13-cv-07608 (WHP), 2014 U.S. Dist. LEXIS 51623, at *12-16 (S.D.N.Y. Apr. 9, 2014) (holding "Volin Group"

---

[3] UPR also cites cases involving scenarios where litigants attempted to remedy their lack of standing with belated assignments. *See* ECF No. 29 at 4-5. These cases are irrelevant though because, as explained above, Mr. Agrawal does not need an assignment from anyone to establish his standing to sue.

consisted of "trusts and IRAs . . . collectively seeking appointment as lead plaintiff" and did not need assignments to establish standing). The special powers of attorney that Mr. Agrawal obtained from his brother and ASGH are intended only to allow Mr. Agrawal "to initiate and oversee [the] litigation" as it progresses. *Phuong Ho*, 2014 U.S. Dist. LEXIS 51623, at \*12.

    **C.    The PSLRA Requires "Proof" of Inadequacy to Rebut the "Lead Plaintiff" Presumption.**

UPR cannot rebut Mr. Agrawal's status as the presumptive lead plaintiff by merely raising a meritless argument. A movant needs "proof" of inadequacy. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). This requires "evidence" showing that a presumptive "lead plaintiff will not do its job adequately." *Gurevitch v. Keycorp*, No. 1:23 CV 01520, 2024 U.S. Dist. LEXIS 14828, at \*8-9 (N.D. Ohio Jan. 29, 2024) (internal quotations omitted); *Roofers' Pension Fund v. Papa*, No. 16-2805, 2017 U.S. Dist. LEXIS 64264, at \*10-11 (D.N.J. Apr. 27, 2017) (movant seeking to rebut presumption "must provide enough evidence to show that it [the argument] is not speculative or meritless"). The ultimate objective is to "protect[] class members from a representative who is not focused on common concerns of the class" while also "protecting a class representative from a defendant seeking to disqualify the representative based on a speculative defense." *Beck v. Maximus, Inc.*, 457 F.3d 291, 301 (3d Cir. 2006); *see also Raymond v. Avectus Healthcare Sols.*, No. 1:15cv559, 2020 U.S. Dist. LEXIS 113675, at \*17 (S.D. Ohio Mar. 27, 2020) (applying *Beck* standard when denying unique defense argument).

UPR falls far short of the standard here. Its entire rebuttal argument was premised on the speculative—and incorrect—assertion that Mr. Agrawal did not purchase any GrafTech shares for his own account and therefore needed "assignments" from his brother or ASGH to serve as lead plaintiff. Mr. Agrawal did, in fact, purchase shares for his own account and, in any event,

represents his brother and ASGH pursuant to special powers of attorney who are "collectively seeking appointment as lead plaintiff." *Phuong Ho*, 2014 U.S. Dist. LEXIS 51623, at *12. Without any "evidence" to show that Mr. Agrawal lacks Article III standing, UPR is unable to rebut the lead plaintiff presumption. *See Kusen v. Herbert*, No. 23-cv-02940-AMO, 2023 U.S. Dist. LEXIS 209945, at *24-25 (N.D. Cal. Nov. 24, 2023) (rejecting "unique defense" argument based on standing); *Ohio Pub. Emps. Ret. Sys. v. Meta Platforms, Inc.*, No. 21-cv-08812-JST, 2022 U.S. Dist. LEXIS 150740, at *10-11 (N.D. Cal. July 26, 2022) (rejecting "unique defense" argument where competing movant failed to show evidence capable of contradicting declaration establishing standing); *Roby*, 2015 U.S. Dist. LEXIS 42388, at *29 (rejecting "unique defense" argument where movant owned shares).

One additional reason exists in favor of rejecting UPR's "unique defense" argument. In its recent *Keycorp* decision, this Court evaluated a potential "unique defense" argument and noted in its analysis that "the movant with the second most highest losses presents none of these distractions [relating to in-and-out trading]." *Gurevitch v. Keycorp*, No. 1:23 CV 01520, 2023 U.S. Dist. LEXIS 228988, at *20-21 (N.D. Ohio Dec. 26, 2023). That is ***not*** the case here. UPR presents a significant and far more acute risk to the class. In 2019, UPR moved for lead plaintiff in a securities class action against Diebold Nixdorf, Inc. *See Karp v. Diebold Nixdorf, Inc.*, No. 19 Civ. 6180 (LAP), 2019 U.S. Dist. LEXIS 188670 (S.D.N.Y. Oct. 30, 2019). The Court denied UPR's motion on the basis that there was a "non-speculative" risk that UPR "will not be an adequate lead plaintiff." *Id.* at *15-16. In pertinent part, the Court reasoned as follows:

> The UPR System is highly dependent on funding from the University of Puerto Rico[,] which receives its funding from the Commonwealth of Puerto Rico, which itself filed for bankruptcy in May 2017. Since then, the destruction caused by Hurricane Maria and political instability stemming from Governor Ricardo Rosselló's resignation have exacerbated Puerto Rico's already dire fiscal situation. This has placed constraints on the amount that the University has been able to contribute to the UPR System, which

8

received under half of its expected contribution from the University for 2020. And, as Puerto Rico's financial collapse drags onward, there appears to be a material risk that these funding constraints continue to grow more severe.

In the Court's eyes, the UPR System's financial predicament undermines the presumption that the UPR/Detroit Movants are the most adequate plaintiff.

*Id.* at *13-16.

While Hurricane Maria and Governor Rosselló's resignation date back several years, UPR's financial instability continues to this day. Presently, UPR is embroiled in a lawsuit against the University of Puerto Rico to prevent it from creating a "second defined contribution retirement plan" that, if allowed to proceed, would effectively eviscerate UPR because contributions would be diverted to the new retirement plan (instead of UPR). In a statement given to *The San Juan Daily Star*, UPR's President, Luis Vicenty Santini, ominously warned that: "The solvency of the UPR Retirement System is not only considered in the assets it has, but also in the contributions it receives . . . If any of these variables, which are the contributions of the participants, the employer and the return on investments, is seen to be at risk or has a problem that is not corrected within a reasonable time, this causes damage to the future stability of the trust. The [University of Puerto Rico] knows this very well and that is why it is delaying payments, on purpose, so that it appears in the state financial [reports] as if we had no solvency . . . ." Richard Gutierrez, *Pay-Up Time*, THE SAN JUAN DAILY STAR (Aug. 16, 2023) (Supplemental Declaration of James R. Cummins, Exhibit G). According to UPR's complaint, the University of Puerto Rico has already withheld "a $58.7 million debt" that has forced UPR to recently "sell $8 million in investment assets in order to cover its needs, including loan disbursements and supplier payments." *Id.*

Filings from the lawsuit substantiate Vicenty's warnings about UPR's insolvency. Indeed, UPR's verified complaint and petition for an injunction alleges *inter alia* that:

9

> [I]f the [University of Puerto Rico] continues breaching its employer's contribution to the Retirement System, as calculated and recommended by the actuary, it would **jeopardize the solvency of the Retirement System [UPR]**. To that effect, the [University of Puerto Rico] budget demonstrates that **the Board of Governors has the intention of continuing its breach**, to the extent that it seeks to withhold close to $8 million of that money. **The risk to the Retirement System [UPR] is imminent** in light of the accrued and operational deficit reflected by the last financial statement of the [University of Puerto Rico], which also contains information as to the auditors' doubts as to whether [University of Puerto Rico] can continue operating.
>
> . . .
>
> As a result of the changes that the Board of Governors proposes to implement, the participants in the Retirement System [UPR] and current pensioners would be at risk of losing future benefits due to the **probable insolvency** of the Retirement System [UPR] as a result of the creation of a second retirement system. This harm would be irreparable.

*Retirement System for the University of Puerto Rico v. University of Puerto Rico*, Civil No. SJ2023CV04406 (Commonwealth of Puerto Rico, Sup. Ct. San Juan) (May 11, 2023) (Complaint), ¶¶31, 33 (emphasis added) (Supplemental Declaration of James R. Cummins, Exhibit H).[4]

UPR's "probable insolvency" creates both a distraction and an acute risk that the litigation in this Court may need to be stayed pending UPR's unwinding or substitution. Second to that, UPR may be inclined to pursue a litigation strategy that would prioritize its need for liquidity over the greater interests of the class at large. The "financial turmoil surrounding [UPR] will practically impede [its] ability to manage this litigation," meaning that "there is a 'non-speculative' risk that [UPR] will not be an adequate lead plaintiff." *Karp*, 2019 U.S. Dist. LEXIS 188670, at *15-16.

### III. CONCLUSION

For all the foregoing reasons, Mr. Agrawal respectfully requests that the Court grant his Motion in its entirety.

---

[4] UPR's lawsuit against the University of Puerto Rico appears to be ongoing. UPR commenced the lawsuit in May 2023. It was then removed to federal court the following month but remanded recently in February 2024 back to the San Juan Part of the Puerto Rico Court of First Instance.

DATED: April 15, 2024

**CUMMINS LAW LLC**

/s/ *James R. Cummins*
James R. Cummins (0000861)
312 Walnut Street, Suite 1530
Cincinnati, Ohio 45202
Tel: 513.721.9000
Fax: 513.721.9001
jcummins@cumminslaw.us

*Liaison Counsel for Shekhar Agrawal,*
*individually and on behalf of Jai Agrawal*
*and Arya Samaj Greater Houston and*
*[Proposed] Liaison Counsel for the Class*

**LEVI & KORSINSKY, LLP**
Adam M. Apton (*pro hac vice* forthcoming)
33 Whitehall Street, 17th Floor
New York, NY 10004
Tel: (212) 363-7500
Fax: (212) 363-7171
Email: aapton@zlk.com

*Lead Counsel for Shekhar Agrawal,*
*individually and on behalf of Jai Agrawal and*
*Arya Samaj Greater Houston and [Proposed]*
*Lead Counsel for the Class*

11

## CERTIFICATE OF SERVICE

I hereby certify that on April 15, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys on record.

/s/ *James R. Cummins*
James R. Cummins

12