UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


JOHN C. PORTER, et al.,                Case No. 1:24-cv-154
                                       Cleveland, Ohio
          Plaintiffs,

     vs.                               TUESDAY, MAY 7, 2024

GRAFTECH INTERNATIONAL, et al.,

          Defendants.


          TRANSCRIPT OF ORAL ARGUMENT PROCEEDINGS
          BEFORE THE HONORABLE DONALD C. NUGENT
          UNITED STATES SENIOR DISTRICT JUDGE


**APPEARANCES:**

For Plaintiff Porter          **BRIAN E. COCHRAN, Esquire**
  and                         Robbins Geller Rudman & Dowd
Movant The University         655 West Broadway, Suite 1900
of Puerto Rico                San Diego, California 92101
Retirement System:

                              **GEORGE W. COCHRAN, III, Esquire**
                              Law Office of George W. Cochran
                              1981 Crossfield Circle
                              Kent, Ohio 44240

                              **MITCHELL M.Z. TWERSKY, Esquire**
                              Abraham, Fruchter & Twersky, LLP
                              450 Seventh Avenue, 38th Floor
                              New York, New York 10123


Court Reporter:               Sarah E. Nageotte, RDR, CRR, CRC
                              United States District Court
                              801 West Superior Avenue
                              Court Reporters 7-189
                              Cleveland, Ohio 44113
                              Sarah_Nageotte@ohnd.uscourts.gov


 Proceedings recorded by mechanical stenography, transcript
          produced with computer-aided transcription.

**APPEARANCES CONTINUED:**

For Defendants        **CONNER F. LANG, Esquire**
GrafTech, Coburn,     **GEOFFREY J. RITTS, Esquire**
Kessler, Flanagan,    Jones Day
and Halford:          901 Lakeside Avenue
                      Cleveland, Ohio 44114


For Defendant Rintoul:  **BENJAMIN D. SCHUMAN, Esquire**
                        DLA Piper
                        650 South Exeter Street
                        Suite 1100
                        Baltimore, Maryland 21202


For Movant Agrawal:   **ADAM M. APTON, Esquire**
                      Levi & Korsinsky
                      33 Whitehall Street, 17th Floor
                      New York, New York 10004

                      **JAMES R. CUMMINS, Esquire**
                      Cummins Law
                      312 Walnut Street, Suite 1530
                      Cincinnati, Ohio 45202

(Proceedings commenced at 9:59 a.m.)

- - -

THE COURT: Okay. We are here -- I don't have the case number.

THE LAW CLERK: 24-cv-154.

THE COURT: Okay. And we're here for a hearing on the selection of class counsel.

Now, everybody's filed a number of papers in relation to their proposal to be selected as class counsel, so who wishes to go forward first? You're both --

MR. BRIAN COCHRAN: Your Honor, I'm happy to.

THE COURT: Okay.

MR. BRIAN COCHRAN: Okay. So my name's Brian Cochran. I'm with Robbins Geller on behalf of The University of Puerto Rico Retirement System --

THE COURT: Uh-huh.

MR. BRIAN COCHRAN: -- which, as Your Honor notes, is one of two remaining motions for lead plaintiff currently pending before the Court. There were a number of others that have either been withdrawn or not pursued.

So Your Honor is familiar with the PSLRA. I know you've had a number of cases under that statute which governs the appointment of lead plaintiff. And as Your Honor knows, what's critical under the statute is the financial interest that entitles the moving party to a

presumption of adequacy that can only be rebutted through proof of nonadequacy.

As was somewhat obfuscated in the initial papers and in opposition, Mr. Agrawal, who is the other competing lead plaintiff movant, has a substantially smaller financial interest as compared to The University of Puerto Rico, smaller losses, but also all four of the Lax/Olsten factors that courts look to, so shares purchased, net funds expended, all substantially lower than the Retirement System.  So that fact was not disclosed until reply.

And we would actually take the position that Mr. Agrawal, to date, has still not filed the statutorily required PSLRA certification.  He was required to denote his own transactions in the securities at issue, still has not done that.  He put in a certification with the opening motion that listed his transactions, but also the transactions of two other nonparties to the case, his brother and a yoga institute that he serves as treasurer for.

Now, they did try to clarify that in a brief on reply, but the PSLRA says that has to be in the certification, so I think, from the get, the motion was defective.

But, more importantly, Mr. Agrawal has now conceded he does not have the larger financial interest, and so, that entitles the Retirement System to the presumption.  He was

required to submit proof of inadequacy in opposing the Retirement System's motion. Not only did he not submit any proof, he actually made no arguments whatsoever as to the Retirement System's adequacy.

There was arguments raised for the first time on reply, which I can get to if Your Honor has questions about those.

THE COURT: You're talking about the lawsuit?

MR. BRIAN COCHRAN: About the lawsuit, yes, Your Honor.

But it wasn't made in opposing the motion, and we really view that as kind of a last-ditch effort given the arguments that we made in opposing.

So Mr. Agrawal's motion is really premised on this idea that he has representative authority through powers of attorney to represent these two nonparties. They did not file motions.

The motions, if -- and they -- the arguments evolved somewhat from the opening papers to the reply, because the case law is very clear on this point, but if you look at the motion papers, it's clear, he filed the motion, he's the only one that filed the motion, he -- nobody else has appeared in the case. These other two folks are absent.

And nobody else filed the PSLRA statutorily required certification. As I said, we would take the position even

his certification is defective. But the other two haven't filed anything. In a PSLRA, it's crystal clear, to have a motion considered, you have to file that certification, so that was not done.

The idea that he can nonetheless assert those losses for the purposes of financial interest calculation is against the PSLRA's explicit language and, also, not just the overwhelming weight of the case law, literally all of the case law. There's no cases they have cited. And, in fact, the two best cases on this point are the cases they're asking the Court to look to for this idea that a power of attorney gives a financial interest to a movant.

The *Huff* -- the seminal *Huff* decision from the Second Circuit, it's over 15 years ago. Counsel is very familiar with this decision. They're one of the most prolific firms in this space. And the cases have been unanimous since then, a power of attorney does not transfer your financial interest, which is the statutory language, which is why lawyers don't move for lead plaintiff. The fact that I'm an attorney here to represent my client does not give me my client's claim.

So you look at the two cases they say we should look at, *NQ Mobile*, it's the situation where the Court is saying: Well, in a situation where named parties have moved, they are allowed to assert the financial interest in their own

right. And the issue in that case was whether trustee -- a trustee who had been assigned the claim could sign the documents essentially for the trusts.

So the assignment in that case, just to give a comparison with what was submitted here, stated -- and this is *NQ Mobile*, 2014 U.S. District Lexis 51623, this is the assignment that was in that case, the trust had, quote, assigned over all rights, title, and interest of the assignor in any and all claims, demands, causes of action of any kind whatsoever that the assignor has or may have arising from violations of the federal securities laws, end quote. That's at page 13.

And the Court expressly distinguishes motions like those of Mr. Agrawal where there's no assignment and they're simply trying to rest on a power of attorney. The Court says that is not sufficient. So that's the case that they're asking the Court to look at. We agree. Look at that case. I think it -- it says exactly what needs to happen here.

The second case that they cite to, this *Ocean Power* decision out of the District of New Jersey, very analogous situation. It's an investment fund that moved and is asking to be appointed lead plaintiff. Again, there, the Court makes a distinction with cases like Mr. Agrawal's motion because the investment fund moved. They are the named

party. And the Court says: They are the named party. It's not a situation where somebody is moving on their behalf through a power of attorney.

And there's good reason for that. We have a statute that requires that party to show up to make certain representations under penalty of perjury because they're asking to take on the interest of thousands of class members so there's certain things they have to do to have that motion considered.

THE COURT: So what's the basis of your application? Why do you think you should be appointed?

MR. BRIAN COCHRAN: So, Your Honor, there's -- again, the statutory scheme sets out what we are required to do. We followed it to a tee, timely filed a motion, put together a certification, which has not been challenged, which lays out the largest financial interest of any movant before the Court.

THE COURT: What about the solvency of the fund?

MR. BRIAN COCHRAN: Yeah, so the solvency issue is a nonissue, which is why they didn't raise it in opposing us. It comes in on reply.

Keep in mind, so they point to this one case from 2019 where in the *Diebold* decision the Judge said: Well, that can be an issue.

Well, now, we have five year of track record where the The University of Puerto Rico Retirement System has not only served as lead plaintiff, they've been certified as a class representative, which requires a much higher burden of evidentiary proof.  And so, they've proven over the last five years they are a capable, diligent class representative.

This issue regarding the financing of the Retirement System, it's very common to pension funds, and you're talking about a relatively immaterial amount of money, $60 million on a $1.7 billion fund that has been around for decades, which has a board of governors that have fiduciary responsibilities, that are tasked and experienced in overseeing lawyers, that are the quintessential lead plaintiff that the statute says should be allowed to lead these cases, and that's exactly who we have before Your Honor.

And, you know, they put in a news article on reply. There's no question, The University of Puerto Rico Retirement System is not going anywhere, not anytime within the foreseeable life of this lawsuit.  And they have a board of governors who are experienced fiduciaries, who are experienced not only in governing retirement systems but actually leading these exact kind of cases very successfully.  They've done that.  Which Mr. Agrawal has

not.

And, then, you compare that to the showing that Mr. Agrawal's made. He's resting the entire motion on this power of attorney, which, again, we think is irrelevant under the case law. But he doesn't file the power of attorney with the motion. He doesn't file it with the opposition, doesn't file it with the reply. It comes just days ago. And you read it and it raises more questions than answers.

First, it makes clear there was no assignment.

Second, Mr. Agrawal is the treasurer of this yoga organization. The treasurer. For some reason, he's the one assigning the ability to go prosecute this case to himself. It -- it's -- what -- it raises questions. I can only speculate why there was no assignment given. I can only speculate why they didn't actually move.

They could have very easily joined the motion. They could have filed an assignment. I don't know why that didn't happen. But because they didn't do that, you -- under the clear case law, their motion -- their interest can't be considered any more than any other absent third party.

THE COURT: Let me ask you: Has the fund had to sell off any investments due to the reduced --

MR. BRIAN COCHRAN: They have.

THE COURT: -- funding?

MR. BRIAN COCHRAN: Yes, Your Honor.

They have had to sell off a -- again, immaterial to the overall size of the fund, but it's not a question of the fund being insolvent or -- you have a fund with a staff, a large staff of administrators, that are experienced in managing multiple litigations and issues at the same time.

But there -- so there has been some sale of assets. The shortfall, again, is less than $60 million. And you're talking about a $1.7 billion fund. So it's not an issue.

THE COURT: You think that's a nonissue then, the whole --

MR. BRIAN COCHRAN: Exactly.

And not only that, we -- again, this is not a new issue. This has been going on for years. And they have demonstrated that whole time that they are zealous, adequate fiduciaries.

The Court in the *Lannett* case not only dismisses this issue as a nonissue, the Court is saying: I have experienced this fund's ability to lead this case. They, quote, diligently prosecuted this case over the last four years. And so, they're -- that is a proven track record of being able to litigate these cases.

And Mr. Agrawal, no due -- no disrespect, we don't have anything comparable to that knowledge of how he would

actually perform.  All's we have is these powers of attorney, which, again, we think raise more questions than answers.

THE COURT:  Great.  Thank you much.

MR. BRIAN COCHRAN:  Thank you.

MR. APTON:  Good morning, Your Honor.

Should I take the lectern or is this --

THE COURT:  It's up to you.  As long as the court reporter can hear you, I think I can hear you.

MR. APTON:  Very good.

I'll take the lectern.  Okay?

THE COURT:  Sure.

MR. APTON:  Okay.  Good morning, Your Honor.

THE COURT:  Good morning.

MR. APTON:  I represent Mr. Agrawal, his brother, and the -- it's not a yoga institution or center, it's a community center that does teaching, religious training, et cetera.  So it's multi purposed.

These three people and entities, Shekhar, Jai, and the Arya entity, they move together as a group, and our motion papers were very clear about that from day one and has been consistent throughout.

Individually and on behalf of, and the on behalf of is intimated by the fact that we have powers of attorney that allowed Mr. Agrawal to take action on their behalf

throughout the lead plaintiff papers in the case.

So it's not just Mr. Agrawal who moved, which, in turn, would require the necessity of these assignments. It's those three individuals and entities and their five accounts in which, collectively, there's a $1.6 million loss, which is much more, much greater than The University of Puerto Rico's loss. So we have the largest financial interest.

There's no adequacy or typicality issues. They all purchased stock. Mr. Agrawal purchased stock while trading in their accounts.

THE COURT: What is his role in his brother's accounts?

MR. APTON: He manages a portfolio for several family members. So it's more than just his brother, but there's several other family members who --

THE COURT: Who makes the investment decision?

MR. APTON: Mr. Agrawal, which is why he obtained the powers of attorney because he's going to be the one, if and when we get to class certification and there's a deposition, the most knowledgeable person about all this investment will be Shekhar Agrawal, so it made sense to obtain these powers of attorney and go forward so that he could sign.

THE COURT: And who made the decision to

14

invest in GrafTech?

MR. APTON:  Mr. Agrawal.

Now, even though that is all true, Jai, his brother, and the Arya institute, they are the beneficial owners of the stock and the losses that ensued, which is why they are nominally included in our motion for lead plaintiff.  It's just that Shekhar Agrawal is the one taking action on their behalf, again, under the powers of attorney.

So we have a group, these three entities and individuals, that have a preexisting litigation relationship.  Case law is very clear that their losses should be aggregated or can be aggregated, should be aggregated, and there's no need for the assignments, which does make our case similar to the *NQ Mobile* case that counsel was talking about because, in that case, the Court said that assignments weren't necessary and --

THE COURT:  Does Mr. Agrawal manage any other accounts or --

MR. APTON:  Yeah, there's other family members.

THE COURT:  Other than the family?

MR. APTON:  I'm sorry?

THE COURT:  Other than the family?

MR. APTON:  Oh, no.  I believe it's limited to his family members.  I believe it's limited to his family

members.

THE COURT:  How about litigation, has he been involved in litigation before?

MR. APTON:  He has.

And in the declaration that we submitted to the Court that he signed, again, on behalf of himself and the brother and the Arya institute, he says -- he describes the other litigation or the experience he has overseeing lawyers.

He's involved in real estate, different trusts, tax issues, immigration, and other business matters.  He's a very successful businessman.  He owns two different businesses.  He's actually in India now.  He has an additional nonprofit or community school that he runs.  So he's a very sophisticated individual and I think would make an excellent lead plaintiff representative having spoken to him.  Granted, my opinion is a little bit biased, but I do think he's a good person for the role.

Now, counsel of Puerto Rico, their opposition was initially premised on the absence of assignments.  They speculated that Shekhar himself, individually, directly, did not have any losses and, therefore, had no standing.  We corrected that.  I don't think that's an issue any more. Everyone knows and agrees or does not dispute that Mr. Agrawal does have losses himself.

The -- I think the material issue here is whether or

not our motion papers have identified Shekhar, his brother, and the Arya institute as a group or not.  I take the position that we have consistently throughout our papers, and I cite the different references in our reply brief, docket 18, docket 18-1, -2, -3, -6, -9, consistently, always, individually and on behalf of Jai Agrawal and Arya Samaj Greater Houston.

It's very clear that these three individuals and entities are moving forward together as a lead plaintiff, as a group, and their losses should be collectively aggregated and considered in whole.

THE COURT:  What's the basis, do you think, that the other side, the fund, doesn't have, I guess, not standing, but the -- shouldn't be a good representative?

MR. APTON:  Sure.

So, Your Honor, it really shouldn't come to that given that the presumption is in our favor and we don't think they've rebutted the presumption.

And I want to be clear that in this analysis, the only time the Court should compare two movants is when comparing financial interests.  So when we get into looking at who's adequate and who is not, I just want to be careful.

And the only reason I put that information, that material in my reply was because of the Court's reference in the *KeyBank* decision to the other movant's adequacy.  I

don't think that's what necessarily drove the decision, but I put it in to be complete.

And I do want to point out that, yes, the *Lannett* decision that The University of Puerto Rico relies on was decided in 2021.  And so, the financial or liquidity issues that were in those papers related to what happened in the aftermath of Hurricane Maria and the governor resigning.

Since 2021, The University of Puerto Rico Retirement System has encountered new, additional liquidity issues, specifically the ones that its chair and president has so colorfully described in newspaper articles and the lawsuit itself.

They are at risk of being completely eliminated because The University of Puerto Rico is contemplating creating a second retirement system, which, if they do that, all contributions will be diverted to that new retirement system and none will go to the old retirement system.

And that's the issue.  That's what they're suing about.  And this has already caused a shortfall.  It's already caused The University of Puerto Rico Retirement System here today to sell off assets in order to meet its current obligations.  But unless they win this lawsuit, this retirement system will be no more.  There will be a new retirement system that The University of Puerto Rico will divert all contributions to, and that's the risk, that's the

issue.

And so, when I cite the *Diebold* case, it's not because of the Hurricane Maria issues.  I'm not arguing that, oh, those are still the issues that are affecting The University of Puerto Rico Retirement System's financial stability today.  It's just showing the Court that these financial issues, generally, have caused disqualification in the past.

These new financial issues, these -- this new liquidity crisis should come to the same result, if the Court was inclined to even go that far.

Again, Mr. Agrawal, his brother, and the Arya institute, they are entitled to the presumption of lead plaintiff, and absent any evidence to show that they're inadequate or atypical or subject to some sort of unique defense, they should be appointed lead plaintiff, Your Honor.

THE COURT:  Great.

MR. APTON:  I do want to point out one last thing.

THE COURT:  Go ahead.

MR. APTON:  The surreply that was filed yesterday, in reading it, I walked away with the impression that counsel suggested that the Arya institute was insolvent.  That's not true.  I submitted some additional material last night.  It's a printout of its corporate

history.

THE COURT:  We received it, yeah.

MR. APTON:  So it is not insolvent.  It is active, in existence, helping the community.

Thank you, Your Honor.

THE COURT:  Thank you very much.

Okay.

MR. BRIAN COCHRAN:  Your Honor, may I just respond?

THE COURT:  You want the last word?

MR. BRIAN COCHRAN:  I just want to respond to a couple points, if that's okay with you.

THE COURT:  Okay.  Go ahead.

MR. BRIAN COCHRAN:  Because I wasn't -- he made a couple points that I didn't address in my --

THE COURT:  Okay.

MR. BRIAN COCHRAN:  -- argument that I think it's necessary to respond to.

So, first off, just a factual representation, there's no -- The University of Puerto Rico Retirement System is not going anywhere.  That's not what the issue is.  They -- they're discussing a potential second plan, but that doesn't mean the current one goes away.  The amount of assets, again, that have been sold off are immaterial.  It's $8 million.  The shortfall is 60 million.

The only movant before the Court that has actually been dissolved was, ironically, and I apologize because I -- Arya is the name of the organization.  I keep calling it the yoga institute.  I know it's got a very long name.  I'm trying to be respectful.  That's the only one that's actually been dissolved.

And the records they put in yesterday, we're not arguing it's currently inactive, but it was involuntarily dissolved, and over a period of five years, according to the records they filed last night, was not able to -- hadn't filed its periodic reporting that made it a viable organization in Texas.  So that is the only movant before the Court that's actually had that issue, and -- well, really, a nonparty.

And, then, this is the final point, is it's not a semantic question whether they moved as a group or not. They did not.  The motions, papers that they filed were very clear, the only person to actually move is Mr. Agrawal.  He did it on behalf of or purported to do it on behalf of these two others.  They have not moved.

If you read every document that was filed, it says: My motion.  The certification was only filed by Mr. Agrawal. The loss chart they put in only has Mr. Agrawal's name on it.

And the statute, again, this is not if you want to do

this, it is statutorily required that if they were going to join that motion, they were required that they, both plaintiffs, had to file certifications in their own right, and this is exactly what the cases say, distinguishes these case -- motions where they're moving on behalf of somebody else through a power of attorney.

And, in fact, every group decision that they cite in their papers, all of the members moved, filed their own certifications, every single one, other than there's one that predates *Huff* that we consider no longer good law in light of that 16-year-old decision, so it's older than that decision, but every other one, those cases show what needs to be done.

But, again, the -- the docket reflects who's actually appeared in this case and so do the motion papers.

THE COURT:  Great.

MR. APTON:  Your Honor, I'm so sorry.

THE COURT:  Now you get the last word.

MR. APTON:  Sorry.

Docket number 18-3 is the certification.  The powers of attorney that were signed in favor of Mr. Agrawal predate the certification.  So when he signed the certification, individually, and on behalf of Jai Agrawal and Arya Samaj Greater Houston, he was doing so with the authority of the powers of attorney on their behalf.  So all three moved.

They signed certifications through Mr. Agrawal.

THE COURT:  That seems to be, really, the crux of your issue.  You say that --

MR. BRIAN COCHRAN:  The case law is very clear.

THE COURT:  -- that's not it.

MR. BRIAN COCHRAN:  That's exactly what you're not allowed to do.  That's what all the cases say.  That's what the statute -- it says such plaintiff, such plaintiff must sign, meaning the plaintiff moving must be the one to sign, personally sign the document.

THE COURT:  Got you.  Okay.

MR. APTON:  I disagree.

THE COURT:  The last-last word.

MR. APTON:  I disagree, Your Honor, yes.

THE COURT:  All right.  Thank you, guys.

I'll get something pretty quick.

COURTROOM DEPUTY:  All rise.

- - -

(Proceedings concluded at 10:25 a.m.)

**C E R T I F I C A T E**

I certify that the foregoing is a correct transcript of the record of proceedings in the above-entitled matter prepared from my stenotype notes.

*/s/ Sarah E. Nageotte*                    *5/10/2024*
SARAH E. NAGEOTTE, RDR, CRR, CRC                    DATE