UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | | |
|---|---|---|
| JOHN C. PORTER, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> GRAFTECH INTERNATIONAL, LTD, et al., <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 1:24-cv-00154-DCN <br><br> Judge Donald C. Nugent <br><br> <u>CLASS ACTION</u> |

LEAD PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION TO STRIKE

LAW OFFICE OF GEORGE W. COCHRAN
GEORGE W. COCHRAN
1981 Crossfield Circle
Kent, OH  44240
Telephone:  330/607-2187
330/230-6136 (fax)

ROBBINS GELLER RUDMAN
 & DOWD LLP
NATHAN R. LINDELL
JENNIFER N. CARINGAL
KEVIN S. SCIARANI
FRANCISCO J. MEJIA
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

[Additional counsel appear on signature page.]

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ..................................................................................................1

II.     RELEVANT BACKGROUND .............................................................................5

III.    LEGAL STANDARD............................................................................................8

IV.     ARGUMENT.........................................................................................................9

       A.      The Motion Is Untimely and Procedurally Improper ..............................9

       B.      The Allegations Attributed to the Former Engineering Lead Are Neither Immaterial nor Impertinent......................................................................10

       C.      The Allegations Attributed to the Former Engineering Lead Are Not Scandalous ..............................................................................................13

V.      CONCLUSION...................................................................................................15

4928-9079-7332.v1

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*Brown & Williamson Tobacco Corp. v. United States*,
201 F.2d 819 (6th Cir. 1953) ....................................................................................................9

*Dep't of the Treasury of N.J. & its Div. of Inv. v. Cliffs Nat. Res., Inc.*,
2015 WL 6870110 (N.D. Ohio Nov. 6, 2015) ....................................................................13, 14

*Griffin v. Bank of Am., N.A.*,
2014 WL 12531103 (W.D. Tenn. Oct. 7, 2014) .........................................................................9

*Halford v. AtriCure, Inc.*,
2010 WL 8973625 (S.D. Ohio Mar. 29, 2010) .......................................................................13

*In re Cognizant Tech. Sols. Corp. Sec. Litig.*,
2018 WL 3772675 (D.N.J. Aug. 8, 2018) ..............................................................................13

*In re Millennial Media, Inc. Sec. Litig.*,
2015 WL 3443918 (S.D.N.Y. May 29, 2015) .........................................................................15

*Jeeper's of Auburn, Inc. v. KWJB Enter., L.L.C.*,
2011 WL 1899195 (E.D. Mich. Mar. 16, 2011) ........................................................................9

*Jewell v. Shelby Cnty. Gov't*,
2013 WL 5306102 (W.D. Tenn. Sept. 20, 2013) .......................................................................9

*Johnson v. Cnty. of Macomb*,
2008 WL 2064968 (E.D. Mich. May 13, 2008) .......................................................................15

*Jones v. Lubrizol Advanced Materials, Inc.*,
583 F. Supp. 3d 1045 (N.D. Ohio 2022) ...................................................................................9

*McKinney v. Bayer Corp.*,
2010 WL 2756915 (N.D. Ohio July 12, 2010) .......................................................................12

*Neal v. City of Detroit*,
2018 WL 1399252 (E.D. Mich. Mar. 19, 2018) ......................................................................14

*New Day Farms, LLC v. Bd. of Trs. of York Twp.*,
2009 WL 1652126 (S.D. Ohio June 10, 2009) ........................................................................14

*Novolex Holdings, LLC v. Wurzburger*,
2022 WL 391307 (E.D. Ky. Feb. 8, 2022) ..............................................................................14

*Sahoo v. Gleaton*,
2017 WL 353971 (E.D.N.C. Jan. 24, 2017) ..............................................................................9

4928-9079-7332.v1

**Page**

*Schlosser v. Univ. of Tenn.*,
   2014 WL 5325350 (E.D. Tenn. Oct. 20, 2014) ...................................................13, 15

*Union Asset Mgmt. Holding AG v. Sandisk LLC*,
   227 F. Supp. 3d 1098 (N.D. Cal. 2017) ............................................................8, 13

## STATUTES, RULES, AND REGULATIONS

Federal Rules of Civil Procedure
   Rule 12 .................................................................................................................1, 8, 9
   Rule 12(b)(6).............................................................................................................1, 9
   Rule 12(f) .....................................................................................................................8
   Rule 12(f)(2) ....................................................................................................... *passim*
   Rule 12(g)(2)....................................................................................................... *passim*

- iii -

4928-9079-7332.v1

Lead Plaintiff University of Puerto Rico Retirement System ("Plaintiff") respectfully submits this memorandum in opposition to the Motion to Strike ("Motion") (*see* ECF 67, *et seq.*) filed by defendants GrafTech International Ltd. ("GrafTech" or the "Company"), Marcel Kessler, Quinn Coburn, Timothy K. Flanagan, and Jeremy S. Halford ("Halford," and collectively, "Defendants").[1]

## I.      INTRODUCTION

Defendants' Motion is a desperate and wasteful attempt to avoid answering for their fraud on the merits.  Lacking any actual support for their Motion, Defendants construct a completely fabricated version of Plaintiff's claims, then attack those manufactured claims in a baseless effort to question the candor and professionalism of Plaintiff and its counsel.  As detailed below, Defendants' tactics are meritless, procedurally improper, and untimely.  As such, the Motion should be denied.

As an initial matter, the Motion is untimely and procedurally improper.  Pursuant to Federal Rule of Civil Procedure ("Rule") 12(f)(2), a motion to strike must be made "either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading." Fed. R. Civ. P. 12(f)(2).  Defendants were served with the Complaint on October 7, 2024, and responded to it by filing a motion to dismiss under Rule 12(b)(6) on December 6, 2024.  *See* ECF 56; ECF 64, *et seq.*[2]  As such, the Motion – filed January 20, 2025 – is untimely under Rule 12(f)(2). It is also procedurally improper under Rule 12(g)(2), which states that "a party that makes a motion under [Rule 12] ***must not*** make another motion under [Rule 12] raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P 12(g)(2).  Here, there is no doubt that the arguments raised in the Motion were available to Defendants but omitted from

---

[1]    ECF 67-1, Defendants' memorandum of law in support of the Motion, is referred to herein as the "Memorandum" or "Mem."

[2]    "Complaint" refers herein to the First Amended Complaint for Violations of the Federal Securities Laws. ECF 56. Unless otherwise noted: all "¶__" and "¶¶__" references herein are to the Complaint; all emphasis is added; and citations are omitted.

4928-9079-7332.v1

their earlier motion to dismiss.

Indeed, the Declaration of Joshua Geitner ("Geitner Declaration" or "Geitner Decl.") (ECF 67-3), upon which Defendants' Motion is based, was executed on November 26, 2024 – ***ten days before Defendants filed their motion to dismiss***.  Geitner Decl. at 2.  Yet, Defendants neither moved to strike before filing their motion to dismiss, nor made any effort to contest the accuracy or reliability of the factual allegations attributed to the "Former Engineering Lead" (*i.e.*, Mr. Geitner) in their motion to dismiss.  *See* ECF 64-1 ("GrafTech MTD") at 26-28, 40.  Instead, Defendants chose to sandbag Plaintiff by strategically sitting on the Geitner Declaration for ***nearly two months*** before filing the present Motion, thereby limiting Plaintiff's time to respond to the Motion's inflammatory accusations, while also affording themselves an additional opportunity to improperly supplement the substantive arguments set forth in their motion to dismiss.  Given Defendants' calculated attempt to gain strategic advantages through their delayed filing of the Motion, their untimeliness under Rule 12(f)(2) and violation of Rule 12(g)(2) should not be excused.

More importantly, the Motion is baseless.  Because the Geitner Declaration does not actually refute the relevant allegations attributed to Mr. Geitner, Defendants create a strawman by mischaracterizing Plaintiff's claims and then attacking those invented claims with the Geitner Declaration.  Specifically, throughout their Memorandum, Defendants claim – without specificity – that Plaintiff has "twisted," "mischaracterize[d]," "misrepresented or misconstrued," and "distorted" the information provided by Mr. Geitner.  Mem. at 1, 4, 6-8.  But it is not until page 8 of the Memorandum that Defendants offer the purported basis for their incendiary accusations: that the Complaint supposedly "misuse[s]" Mr. Geitner's information to "create inaccurate impressions" by "urging the Court to draw the conclusion that graphitizing and machining were not occurring at St. Marys."  *Id.* at 8.

4928-9079-7332.v1

The Complaint, however, contains no such "urging." In fact, the Complaint includes ***no allegation*** – whether based on the facts attributed to the Former Engineering Lead or any other fact – "that graphitizing and machining were not occurring at St. Marys." *Id.*; *see also, e.g.*, ¶¶53-65, 143(b), 154(b), 163(b), 169(b) (setting forth the basis for the alleged misstatements concerning St. Marys's purported "pin production" operations and containing no allegations concerning "graphitizing and machining" activities, or any alleged lack thereof). Indeed, Defendants' motion to dismiss confirms as much by expressly asserting that: (1) the allegations attributed to the Former Engineering Lead "***do not touch on the graphitizing or machining operations at St. Marys***"; (2) the "***Complaint does not tie the equipment alleged to be inoperable, or any lapsed permitting, to graphitizing or machining***"; and (3) "the Former Engineering Lead is ***not alleged to have said that St. Marys wasn't engaging in the graphitizing and machining steps***." GrafTech MTD at 26-27 (some emphasis in original).[3] As such, Defendants' contention that the Complaint attempts to "distort what Mr. Geitner told Plaintiff's representatives" in order to contend "that graphitizing and machining were not occurring at St. Marys" is directly refuted by both the Complaint's allegations and ***Defendants' own interpretation*** of those allegations. Mem. at 7-8.

Put simply, as explained in Plaintiff's Omnibus Memorandum in Opposition to the Motions to Dismiss ("OMTD"), filed concurrently herewith, the Complaint makes no attempt to allege that "graphitizing and machining" were not occurring at St. Marys, because whether "graphitizing and machining" were – or were not – occurring at St. Marys is ***irrelevant*** to Plaintiff's claims. *See* OMTD at 35 n.10, 40-41. Instead, the Complaint alleges Defendants falsely represented that St. Marys was engaged in "pin ***production***" – which purportedly provided GrafTech with two "***pin production facilities***" and helped "***de[-]risk*** [GrafTech's] pin ***production*** capacity" – when, in fact,

---

[3]    *See also* Mem. at 3-4 ("Nor does the Complaint allege that the St. Marys plant was not in fact conducting the graphitizing and machining steps of the manufacturing process during the proposed class period.").

that was not true. ¶¶8, 10, 53-65, 143(b), 154(b), 163(b), 169(b). The allegations attributed to the Former Engineering Lead – as well as Defendants' ***own subsequent admissions*** – support these claims by confirming that St. Marys was not engaged in actual "pin ***production***." Defendants' focus on St. Marys's "graphitizing and machining" activities is simply beside the point.

Without Defendants' misconstrued fabrication of Plaintiff's claims, the Geitner Declaration provides no support for Defendants' contention that the Complaint "mischaracterize[s] what Mr. Geitner told representatives of Plaintiff." Mem. at 6. To the contrary, the Geitner Declaration explains that Mr. Geitner's "comments to the lawyers or investigators about operations, equipment (including a press and cooling pond), and permits at the St. Marys Plant" – which he does not retract or refute – "were limited to initial stages of the ***production*** process." Geitner Decl., ¶4. This assertion is consistent with the Complaint, which alleges that St. Marys was not engaged in "pin ***production***." ¶¶8, 10, 143(b), 154(b), 163(b), 169(b). In addition, Mr. Geitner states that he "did not tell the lawyers or investigators for plaintiff that GrafTech was not graphitizing or machining at St. Marys during [his] tenure with the Company." Geitner Decl., ¶5. As explained above, this assertion is also consistent with the Complaint, which contains ***no allegation*** that "GrafTech was not graphitizing or machining at St. Marys." *Id.*

The Geitner Declaration also states that Mr. Geitner "do[es] not ***recall*** telling the lawyers or investigators that 'the St. Marys facility was not involved in the production or manufacturing of any pins.'" *Id.* Notably – and in contrast to Mr. Geitner's unequivocal (but irrelevant) assertion regarding St. Marys's "graphitizing or machining" activities – the Geitner Declaration does ***not*** assert that he made no such statement, and it does ***not*** dispute the accuracy of the factual allegations underlying that statement (which include the above-referenced allegations "about operations, equipment (including a press and cooling pond), and permits at the St. Marys Plant"). *Id.*, ¶¶4-5.

- 4 -

Moreover, the veracity of Plaintiff's allegation that St. Marys was not, in fact, engaged in "***pin production***" at the time of the alleged misstatements is not genuinely in dispute. Indeed, on November 4, 2022 – a full year after defendant Halford represented that St. Marys's "operational" "***pin production*** line" provided GrafTech with two "connecting ***pin production facilities***" – GrafTech admitted that the Company was just then "pursuing approvals for operating permits to restart the [St. Marys] facility for ***pin production***," thereby confirming Plaintiff's allegation that St. Marys was not previously engaged in "pin production," despite Defendants' false representations that it was. ¶¶65, 75, 172.

Defendants' additional argument that the allegations are "immaterial and impertinent" because they "have nothing to do with graphitizing and machining" (Mem. at 6-7) is similarly misplaced. If anything, it is Defendants' argument that is "immaterial and impertinent" because, as explained above, whether or not St. Marys was involved in "graphitizing and machining" is irrelevant to Plaintiff's claims.

Moreover, Defendants' contention that "Plaintiff seemingly ignored best practices in securities litigation" is unfounded and wrong. *Id.* at 1, 8 n.3. As detailed below, Plaintiff's representatives spoke with Mr. Geitner on multiple occasions; informed him of their intention to use his information in the Complaint; and verified the specific facts attributed to him prior to including them in the Complaint. There is no basis upon which to contend that Plaintiff was required to do more.

## II. RELEVANT BACKGROUND

GrafTech is a global manufacturer of graphite electrode products, each of which is affixed with one "connecting pin." ¶¶32-33. The Company owns and operates four manufacturing facilities around the world, including facilities located in Monterrey, Mexico, and St. Marys, Pennsylvania. ¶35. During the second quarter of 2016, GrafTech purportedly "warm-idled" its St. Marys facility.

4928-9079-7332.v1

¶38. By warm-idling its St. Marys facility, GrafTech claimed it could restart the facility in short order to satisfy incremental demand requirements. *Id.*

Beginning in the second half of 2021 and continuing through the first half of 2022, Defendants materially misled investors by falsely representing that St. Marys had implemented an "operational" "*pin production* line," which supposedly "*de[-]risk[ed]* [GrafTech's] *pin production* capacity" by providing the Company with two "*pin production* facilities." ¶¶53-65, 75, 142-143, 151, 153-154, 158, 163, 168-169. Specifically, on August 6, 2021, defendant Halford told investors that the Company was "investing in a pin production line" at St. Marys that would "diversif[y] [GrafTech's] pin capacity and provide[] production flexibility." ¶142. On November 5, 2021, Halford stated that St. Marys's "pin production line" was "now operational," which "[i]mportantly" provided GrafTech with "2 connecting pin production facilities." ¶153. During subsequent earnings calls on February 4, 2022 and May 6, 2022, Halford continued to extoll the benefits of St. Marys's "pin production" operations by claiming that the facility helped "de[-]risk [GrafTech's] pin production capacity." ¶¶158, 168.

These statements were materially false and misleading because they conveyed that St. Marys's "pin production" operations helped protect GrafTech against commercial disruptions due to insufficient pin supply, when in fact St. Marys's operations provided no such protection at all. ¶¶57-58, 64, 143(b), 154(b), 163(b), 169(b), 187. Indeed, in direct contrast to Defendants' clear and specific representations about St. Marys's ability to produce pins, St. Marys had neither the functioning equipment nor the operating permits needed to engage in "pin production," and was thus incapable of "*de-risk[ing]* [GrafTech's] pin *production* capacity." ¶¶58-65. The Complaint's allegations regarding St. Marys's lack of engagement in actual "pin production" – and consequent inability to "de[-]risk [GrafTech's] pin production capacity" – are supported both by Defendants' own admissions and the detailed factual allegations attributed to the Former Engineering Lead. *Id.*

- 6 -

Among other things, the allegations attributed to the Former Engineering Lead establish that: (1) St. Marys did not possess functional "equipment needed for manufacturing graphite electrode products and pins, which included a large press for extruding graphite, a cooling pond, and the tools needed to operate such equipment," at the time of his hiring in August 2022 (¶60); (2) "the St. Marys facility did not have the appropriate operating permits to produce graphite electrode products and pins" as of September 2022 (¶61); (3) "GrafTech did not *begin* the process of obtaining the operating permits required for such production until early-2023" (*id.*) (emphasis in original); and (4) "it was not until late-2023 that the St. Marys facility conducted its first 'pin trial run'" (¶62). The fact that St. Marys was not actually engaged in "pin production" at the time of the alleged misstatements is also confirmed by GrafTech's November 4, 2022 admission that St. Marys did not previously possess the operating permits required for "*pin production*." ¶¶65, 75, 172.

Between July and October 2024, Plaintiff's representatives met telephonically with Mr. Geitner on three separate occasions. The first call, which occurred on July 10, 2024, was conducted by an investigator who identified himself as a representative of Plaintiff's counsel and explained that he was seeking to gather information related to an ongoing securities fraud litigation involving GrafTech. The second call, which occurred on August 20, 2024, was attended by an investigator and three of Plaintiff's lawyers. During this call, Plaintiff's counsel identified themselves and informed Mr. Geitner that the information he provided may be used in the Complaint. Plaintiff's counsel further informed Mr. Geitner that, although he would not be identified by name in the Complaint, Plaintiff could not guarantee that his confidentiality would be maintained throughout the entirety of the case. The third call, which occurred on October 1, 2024, was attended by an investigator and two of Plaintiff's lawyers. During this call, Plaintiff's counsel again identified themselves and informed Mr. Geitner that the purpose of the call was to confirm the accuracy of specific information he had previously provided, which Plaintiff intended to include in the Complaint. Plaintiff's counsel

then read the specific allegations Plaintiff intended to attribute to Mr. Geitner, and Mr. Geitner confirmed the accuracy of all facts that were ultimately attributed to him in the Complaint.  During this call, Plaintiff's counsel again informed Mr. Geitner that, although he would not be identified by name in the Complaint, his confidentiality could not be guaranteed throughout the entirety of the case.[4]

On November 26, 2024, Mr. Geitner executed the Geitner Declaration.  Geitner Decl. at 2. Ten days later, on December 6, 2024, Defendants filed their motion to dismiss the Complaint, which did not mention the Geitner Declaration or otherwise question the veracity of the allegations attributed to the Former Engineering Lead.  *See* GrafTech MTD at 26-28, 40.  On January 20, 2025 – nearly two months after Mr. Geitner executed the Geitner Declaration – Defendants filed the present Motion.  *See* ECF 67, *et seq.*

## III.    LEGAL STANDARD

Pursuant to Rule 12(f), a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).  However, a motion to strike must be "made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading." Fed. R. Civ. P. 12(f)(2).  In addition, "a party that makes a motion under [Rule 12] *must not* make another motion under [Rule 12] raising a defense or objection that was available to the party but omitted from its earlier motion."  Fed. R. Civ. P 12(g)(2).

---

4    Should the Court deem it necessary at this pre-discovery stage, Plaintiff can provide evidentiary support regarding its contacts with Mr. Geitner.  Plaintiff, however, believes it is unnecessary and premature to do so at this stage, given the discovery stay imposed by the Private Securities Litigation Reform Act of 1995 ("PSLRA") and the numerous grounds detailed herein for denying the Motion without any further inquiry.  Should the Court believe that additional inquiry is warranted, Plaintiff respectfully submits that it should be entitled to conduct relevant document discovery, as well as discovery regarding Defendants' contacts with Mr. Geitner and the assertions set forth in the Geitner Declaration.  *See Union Asset Mgmt. Holding AG v. Sandisk LLC*, 227 F. Supp. 3d 1098, 1099-1100 (N.D. Cal. 2017).

4928-9079-7332.v1

"Courts disfavor motions to strike because they 'propose . . . a drastic remedy.'" *Jeeper's of Auburn, Inc. v. KWJB Enter., L.L.C.*, 2011 WL 1899195, at *1 (E.D. Mich. Mar. 16, 2011). Indeed, the Sixth Circuit has previously cautioned that "the action of striking a pleading should be sparingly used by the courts," "resorted to only when required for the purposes of justice," and "only when the pleading to be stricken has no possible relation to the controversy." *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953). Thus, the standard for granting motions to strike is high. *Griffin v. Bank of Am., N.A.*, 2014 WL 12531103, at *1 (W.D. Tenn. Oct. 7, 2014). "Any doubt about whether the challenged material is redundant, immaterial, impertinent, or scandalous should be resolved in favor of the non-moving party." *Jewell v. Shelby Cnty. Gov't*, 2013 WL 5306102, at *4 (W.D. Tenn. Sept. 20, 2013).

## IV.     ARGUMENT

### A.     The Motion Is Untimely and Procedurally Improper

As detailed above, the Motion was filed 45 days after Defendants responded to the Complaint by filing a motion to dismiss on December 6, 2024, and more than 100 days after Defendants were first served with the Complaint. *See* ECF 56; ECF 64, *et seq.* As such, the Motion is untimely under Rule 12(f)(2). *See Sahoo v. Gleaton*, 2017 WL 353971, at *1 (E.D.N.C. Jan. 24, 2017) ("Defendants' motion was brought more than a month after it responded to the amended complaint with a motion to dismiss, and is, therefore, untimely."). It is also procedurally improper pursuant to Rule 12(g)(2), which "provides that a party, like Defendants here who previously moved to dismiss under Rule 12(b)(6), 'must not make another motion under [Rule 12] raising a defense or objection that was available to the party but omitted from its earlier motion.'" *Jones v. Lubrizol Advanced Materials, Inc.*, 583 F. Supp. 3d 1045, 1054 (N.D. Ohio 2022).

As detailed above, the Geitner Declaration was executed **ten days before Defendants filed their motion to dismiss**. Geitner Decl. at 2. Defendants offer no explanation for the nearly two-

- 9 -

month delay between the execution of the Geitner Declaration and the untimely filing of their Motion.  Indeed, if the at-issue allegations truly were "scandalous," as Defendants contend, one would expect Defendants to file their Motion expeditiously.  Mem. at 8-9.  Instead, they chose to sit on the Geitner Declaration for nearly two months, before then using their delayed Motion as an opportunity to improperly supplement the substantive arguments set forth in their 45-page motion to dismiss.  As such, the Motion is both untimely under Rule 12(f)(2) and procedurally improper under Rule 12(g)(2).

B.    **The Allegations Attributed to the Former Engineering Lead Are Neither Immaterial nor Impertinent**

Defendants claim that the allegations attributed to the Former Engineering Lead are immaterial and impertinent because: (1) "the allegations have nothing to do with graphitizing and machining"; and (2) they "mischaracterize what Mr. Geitner told representatives of Plaintiff."  Mem. at 6-8.  These arguments fail because they are both premised on a fabricated and irrelevant version of Plaintiff's Complaint.

Defendants' assertion that the allegations "do not relate to the graphitizing and machining phases *at the heart of the alleged misstatements* about St. Marys" plainly ignores the Complaint's allegations, which do not rely on any facts regarding St. Marys's graphitizing and machining activities.  *Id.*  While it is obvious why Defendants wish to reframe the alleged misrepresentations in a manner that fits the narrative of their defense, they do not get to define the "alleged misstatements" at issue in the case; the Complaint does.  And, contrary to Defendants' self-serving assertions, "Defendants' *alleged misstatements* about operations at the St. Marys Plant" make *no mention* of "the graphitizing and machining steps of the manufacturing process at St. Marys."  *Id.*; *see also* ¶¶142, 151, 153, 158, 168.  Instead, the alleged misstatements concern Defendants' representations that St. Marys had implemented an "operational" "pin *production* line," which supposedly "*de[-]risk[ed]* [GrafTech's] pin *production* capacity" by providing the Company with two "pin

- 10 -

*production* facilities." ¶¶53-65, 75, 142-143, 151, 153-154, 158, 163, 168-169.  As detailed above, the allegations attributed to the Former Engineering Lead directly support Plaintiff's claims by establishing – consistent with Defendants' own subsequent admissions – that St. Marys was not actually engaged in "pin production" at the time of the alleged misrepresentations, and in fact did not even begin the process of obtaining the operating permits required for "pin production" until early-2023.  ¶¶58-65.  As such, the allegations are clearly not immaterial or impertinent.

Although Defendants' motion to dismiss asserts – *as a defense* – that investors were not misled by the alleged misstatements because GrafTech purportedly disclosed on separate occasions that St. Marys's activities were "limited to pin machining" (GrafTech MTD at 24-25), this truth-on-the-market defense cannot redefine what is "at the heart of the alleged misstatements," and it does not establish that the allegations "do not serve as a factual predicate to Plaintiff's claim."  Mem. at 7.  Moreover, as further detailed in Plaintiff's opposition to Defendants' motion to dismiss, Defendants' contested, fact-bound argument is inappropriate at the pleading stage and flawed for several reasons, including the fact that none of GrafTech's disclosures prior to November 4, 2022 stated that St. Marys's activities were "*limited* to pin machining."  OMTD at 36-41.  Additionally, Defendants' attempt to reinterpret the alleged misstatements as relating solely to graphitizing and machining defies common sense and ignores the actual words used by Defendants.  Indeed, if Halford's representations were intended to convey nothing more than a continuation of previously disclosed "graphitizing and machining" activities, he would not have described St. Marys's operations as providing GrafTech with two "*pin production facilities*" or claimed that they helped "*de[-]risk* [GrafTech's] *pin production capacity*."  ¶¶142-143, 151, 153-154, 158, 163, 168-169.  Defendants' argument implies that the words "pin production" had no specific meaning, but this is belied by the specific words GrafTech chose to use on November 4, 2022, when it disclosed that the Company

- 11 -

was, at that time, pursuing the permits required for "***pin production***." ¶¶65, 172.[5]

As detailed above, Defendants' additional contention that the Complaint's allegations "distort what Mr. Geitner told Plaintiff's representatives" is unsupported by anything more than Defendants' mischaracterizations of Plaintiff's claims. Mem. at 7-8. Contrary to Defendants' assertions, the Complaint alleges that Defendants misrepresented St. Marys's pin "production" capabilities, which is consistent with information provided by Mr. Geitner.[6] The Complaint does ***not allege*** – based on allegations attributed to the Former Engineering Lead or otherwise – "that graphitizing and machining were not occurring at St. Marys." Mem. at 8; *see also* ¶¶53-65, 143(b), 154(b), 163(b), 169(b). And Defendants' own concessions expressly acknowledge as much. *See* GrafTech MTD at 26-27; *see also* Mem. at 3-4 ("Nor does the Complaint allege that the St. Marys plant was not in fact conducting the graphitizing and machining step of the manufacturing process during the proposed class period.").[7]

---

[5] Because Defendants' argument is premised on an incorrect and self-serving characterization of what is "at the heart of the alleged misstatements," their reliance on *McKinney v. Bayer Corp.*, 2010 WL 2756915, at *2 (N.D. Ohio July 12, 2010) is wholly misplaced. Mem. at 7. The stricken allegations in *McKinney* concerned "other products and past settlements [that had] ***no apparent relation to the claims asserted in this case***," and were thus "unnecessary to the assertions in the Complaint." 2010 WL 2756915, at *2. By contrast, the allegations attributed to the Former Engineering Lead unquestionably concern the specific manufacturing facility (St. Marys) and the specific operations ("pin production") at issue in the alleged misstatements. ¶¶53-65, 75, 142-143, 151, 153-154, 158, 163, 168-169.

[6] As explained above, the Geitner Declaration does not refute the factual allegations attributed to him concerning the claim that St. Marys was not engaged in actual pin production at the time of the alleged misstatements, a fact Defendants later admitted. *See* Geitner Decl., ¶4 (stating that comments "about operations, equipment (including a press and cooling pond), and permits at the St. Marys Plant were limited to initial stages of the ***production*** process"); *id.*, ¶5 (stating only that Mr. Geitner "do[es] not ***recall*** telling the lawyers or investigators that 'the St. Marys facility was not involved in the production or manufacturing of any pins'"); *see also* ¶¶65, 75, 172 (Defendants admitted on November 4, 2022 that the Company was just then "pursuing approvals for operating permits to restart the [St. Marys] facility for ***pin production***").

[7] Because Defendants lack support for their assertion that the Complaint's allegations "distort what Mr. Geitner told Plaintiff's representatives" (Mem. at 7-8), *Schlosser v. Univ. of Tenn.*, 2014 WL 5325350, at *4 (E.D. Tenn. Oct. 20, 2014) has no applicability here. In *Schlosser*, the subject of

- 12 -

Moreover, as numerous courts have recognized, motions to strike confidential witness allegations are generally disfavored at the pleading stage. *See, e.g.*, *Dep't of the Treasury of N.J. & its Div. of Inv. v. Cliffs Nat. Res., Inc.*, 2015 WL 6870110, at *4 (N.D. Ohio Nov. 6, 2015) ("[T]he issues of fact and credibility raised by Defendants' witness declarations cannot be determined at the pleading stage."); *Halford v. AtriCure, Inc.*, 2010 WL 8973625, at *3 (S.D. Ohio Mar. 29, 2010) ("When presented with confidential witnesses who were later identified and provided conflicting affidavits or declarations, courts are reluctant to strike the original statements by the confidential witnesses."); *In re Cognizant Tech. Sols. Corp. Sec. Litig.*, 2018 WL 3772675, at *12 (D.N.J. Aug. 8, 2018) ("Other courts have similarly refused to strike allegations attributed to confidential witnesses [at] the pleading stage when presented with declarations of those witnesses that are supposedly inconsistent with the allegations in the complaint."). Indeed, as courts have noted, statements in declarations from confidential witnesses "might be true," or they "might be false, because the witness feels intimidated by the defendants." *Sandisk*, 227 F. Supp. 3d at 1099. As such, "[b]efore the Court could credit the declaration . . . it would obviously need to give [Plaintiff] an opportunity to test the declaration's accuracy through discovery, an evidentiary hearing, or both." *Id.* at 1099-1100.

## C. The Allegations Attributed to the Former Engineering Lead Are Not Scandalous

Defendants' contention that the allegations attributed to the Former Engineering Lead are "scandalous" is spurious and unsupported by the authorities they cite. Mem. at 8-9. An allegation is scandalous only if it "'unnecessarily reflects on the moral character of an individual or states anything in repulsive language that "detracts from the dignity of the court.""" *Neal v. City of*

---

the stricken allegations submitted a sworn statement that "***clearly contradict[ed]*** the Plaintiffs' claim" and was supported by multiple other sworn statements, thus establishing that the stricken allegation was "***clearly false***." 2014 WL 5325350, at *4. Here, by contrast, the Geitner Declaration does not contradict – but is, in fact, consistent with and supportive of – Plaintiff's claims.

4928-9079-7332.v1

*Detroit*, 2018 WL 1399252, at \*1 (E.D. Mich. Mar. 19, 2018).

Defendants do not assert that any allegation attributed to the Former Engineering Lead contains repulsive language that detracts from the dignity of the Court. *See* Mem. at 8-9. Instead, Defendants contend that such allegations are "scandalous" because they purportedly "cast aspersions on Mr. Halford's character by suggesting that he committed intentional fraud." *Id.* at 9. This is a securities fraud case. By Defendants' misguided logic, ***any*** allegation supporting a claim for securities fraud would necessarily qualify as "scandalous." Indeed, "paying heed to [this] argument would lead to the curious result of dismissing nearly every complaint alleging fraud." *Cliffs*, 2015 WL 6870110, at \*4 (denying motion to strike fraud allegations based on arguments that plaintiff "misrepresented" and "distorted" information obtained from a confidential witness); *see also New Day Farms, LLC v. Bd. of Trs. of York Twp.*, 2009 WL 1652126, at \*4 (S.D. Ohio June 10, 2009) (declining to strike allegations evidencing racial animus because "a complaint setting forth a cause of action under §1985(3) is required to contain such an allegation or be subject to dismissal").

The cases cited by Defendants only highlight the stark contrast between the allegations at issue here and those that actually constitute "scandalous matter" warranting a motion to strike. *See* Mem. at 9. In *Novolex Holdings, LLC v. Wurzburger*, 2022 WL 391307 (E.D. Ky. Feb. 8, 2022), for example, the court struck allegations concerning "actions in [the defendant's] personal life, including allegations that [he] participated in extra-marital relationships and a secret gambling ring," which the court found to be "immaterial because they lack a logical connection to the underlying claims." *Id.* at \*3. Similarly, in *Johnson v. Cnty. of Macomb*, 2008 WL 2064968 (E.D. Mich. May 13, 2008), the court struck allegations regarding a county employee's purported "'known ties to organized crime,'" which had "no essential relationship to the [claims]." *Id.* at \*1-\*2. By contrast, the Complaint's allegations regarding defendant Halford do not touch upon his personal life, but are instead strictly

- 14 -

limited to his professional responsibilities at GrafTech that directly relate to the substance of his alleged misstatements in the case. *See, e.g.*, ¶¶54-57, 59, 61, 63, 142, 153, 158, 168, 212-215.

Defendants' other argument that allegations attributed to Mr. Geitner have purportedly "created a needless cloud over a former employee's professional reputation" is similarly meritless. Mem. at 8. Unlike the situation in *Schlosser*, here there is no basis to contend that the allegations attributed to the Former Engineering Lead are "clearly false" or "wholly irrelevant" to Plaintiff's claims. 2014 WL 5325350, at *4. Moreover, Defendants' attempt to impugn Plaintiff's investigative process is baseless. Mem. at 1, 8 n.3. As detailed above, Plaintiff's representatives conducted multiple calls with Mr. Geitner, informed him that the information he provided would be used in the Complaint, and specifically verified the accuracy of the facts ultimately attributed to him in the Complaint. Defendants cite no authority suggesting that Plaintiff's representatives were required to do more. Mem. at 8 n.3. To the contrary, Plaintiff's processes adhered to the same "best practice" described by Defendants' own cited authority. *See In re Millennial Media, Inc. Sec. Litig.*, 2015 WL 3443918, at *1 (S.D.N.Y. May 29, 2015).

## V.     CONCLUSION

For the reasons set forth above, the Motion is untimely, procedurally improper, and baseless. As a result, Plaintiff respectfully requests that it be denied.

DATED: February 3, 2025                    LAW OFFICE OF GEORGE W. COCHRAN


                                          s/ George W. Cochran
                                          ─────────────────────────────
                                          GEORGE W. COCHRAN (Bar # 0031691)
                                          1981 Crossfield Circle
                                          Kent, OH  44240
                                          Telephone:  330/607-2187
                                          330/230-6136 (fax)
                                          lawchrist@gmail.com

                                          Local Counsel for Lead Plaintiff


- 15 -

4928-9079-7332.v1

DATED: February 3, 2025

ROBBINS GELLER RUDMAN
  & DOWD LLP

                  s/Nathan R. Lindell

NATHAN R. LINDELL (admitted *pro hac vice*)
JENNIFER N. CARINGAL (admitted *pro hac vice*)
KEVIN S. SCIARANI (admitted *pro hac vice*)
FRANCISCO J. MEJIA (admitted *pro hac vice*)
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
nlindell@rgrdlaw.com
jcaringal@rgrdlaw.com
ksciarani@rgrdlaw.com
fmejia@rgrdlaw.com

ABRAHAM, FRUCHTER & TWERSKY, LLP
MITCHELL M.Z. TWERSKY
(admitted *pro hac vice*)
MICHAEL J. KLEIN (admitted *pro hac vice*)
450 Seventh Avenue, 38th Floor
New York, NY 10123
Telephone: 212/279-5050
212/279-3655 (fax)
mtwersky@aftlaw.com
mklein@aftkaw.com

ABRAHAM, FRUCHTER & TWERSKY, LLP
PATRICE L. BISHOP (admitted *pro hac vice*)
9440 Santa Monica Boulevard, Suite 301
Beverly Hills, CA 90210
Telephone: 310/279-5125
pbishop@aftlaw.com

Lead Counsel for Lead Plaintiff

- 16 -

4928-9079-7332.v1

**CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 7.1(F)**

The foregoing Memorandum in Opposition to Motion to Strike complies with the page limitation set forth in the United States District Court for the Northern District of Ohio Local Rule 7.1(f).

DATED:  February 3, 2025                  LAW OFFICE OF GEORGE W. COCHRAN


                                          s/ George W. Cochran
                                          _____
                                          GEORGE W. COCHRAN (Bar # 0031691)
                                          1981 Crossfield Circle
                                          Kent, OH  44240
                                          Telephone:  330/607-2187
                                          330/230-6136 (fax)
                                          lawchrist@gmail.com

4928-9079-7332.v1