IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JOHN C. PORTER, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> GRAFTECH INTERNATIONAL LTD., DAVID RINTOUL, QUINN COBURN, MARCEL KESSLER, TIMOTHY K. FLANAGAN, JEREMY S. HALFORD, BCP IV GRAFTECH HOLDINGS LP, BROOKFIELD CAPITAL PARTNERS LTD., and BROOKFIELD ASSET MANAGEMENT LTD., <br><br> Defendants. | Case No. 1:24-cv-00154 <br><br> Judge Donald C. Nugent <br><br> Magistrate Judge Jonathan D. Greenberg |

**REPLY IN
SUPPORT OF THE MOTION OF DEFENDANTS
GRAFTECH, KESSLER, COBURN, FLANAGAN, AND HALFORD
TO STRIKE ALLEGATIONS REGARDING "FORMER ENGINEERING LEAD"**

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES................................................................................................. ii

I.  THE ALLEGATIONS ABOUT THE FORMER ENGINEERING LEAD'S
    OBSERVATIONS ARE IMMATERIAL AND IMPERTINENT ......................................... 1

II. THE COURT SHOULD REACH THE MERITS OF THE MOTION TO STRIKE ............ 4

CONCLUSION ................................................................................................................. 7

i

# TABLE OF AUTHORITIES

**Page**

CASES

*Blick v. Ann Arbor Pub. Sch. Dist.*,
 2021 WL 10132110 (E.D. Mich. Sept. 30, 2021)................................................................6, 7

*Hill v. Herbert Roofing & Insulation, Inc.*,
 2014 WL 234217 (E.D. Mich. Jan. 22, 2014)............................................................................5

*In re Millennial Media, Inc. Sec. Litig.*,
 2015 WL 3443918 (S.D.N.Y. May 29, 2015) ...........................................................................4

*J&J Sports Prods., Inc. v. Lawson*,
 2019 WL 1754744 (D.S.C. Apr. 19, 2019)................................................................................5

*Tracfone Wireless, Inc. v. Access Telecom, Inc.*,
 642 F. Supp. 2d 1354 (S.D. Fla. 2009) .....................................................................................4

STATUTES

15 U.S.C.
 § 78u–4(c)(1) ............................................................................................................................4

OTHER AUTHORITIES

Federal Rule of Civil Procedure 11(b)...........................................................................................4

Federal Rule of Civil Procedure 12 ...........................................................................................5, 6

Federal Rule of Civil Procedure 12(f) ........................................................................................4, 5

Federal Rule of Civil Procedure 12(f)(1)....................................................................................5, 6

Federal Rule of Civil Procedure 12(f)(2)....................................................................................4, 5

Federal Rule of Civil Procedure 12(g)(2) ...............................................................................5, 6, 7

Plaintiff's Opposition (ECF No. 70), like its Complaint, selectively pulls short sentences and phrases from lengthy statements by GrafTech and its officers about the Company adding an automated pin line at its St. Marys Plant.[1]  Plaintiff then asserts that these snippets are misleading, in part because a Former Engineering Lead (Joshua Geitner) observed that the early stages of GrafTech's manufacturing process were not taking place at the Plant.  But the Court can, and should, properly consider the full documents from which Plaintiff took the excerpts.  When viewed in their entirety, those documents show that the allegedly misleading statements have nothing to do with Mr. Geitner's observations about the early stages of the manufacturing process.  Rather, the alleged misstatements about the launch of an automated pin line refer solely to the last stage of GrafTech's manufacturing process, machining, which Plaintiff now does not dispute indeed was occurring at St. Marys (though the Complaint twists Mr. Geitner's observations to insinuate machining was not taking place at the Plant).  Because the allegations relating to Mr. Geitner have no bearing on the challenged statements about the St. Marys Plant, they are immaterial and impertinent.

The Court should exercise its broad discretion under the Federal Rules and strike the paragraphs related to the Former Engineering Lead from the Complaint.

## I.  THE ALLEGATIONS ABOUT THE FORMER ENGINEERING LEAD'S OBSERVATIONS ARE IMMATERIAL AND IMPERTINENT.

Plaintiff does not address whether allegations about the early stages of GrafTech's manufacturing process are immaterial and impertinent to alleged misstatements about later

---

[1] All defined terms have the meaning they had in the Memorandum in Support of the Motion of Defendants GrafTech, Kessler, Coburn, Flanagan, and Halford to Strike Allegations Regarding "Former Engineering Lead" (the "Memorandum") (ECF No. 67-1).  *E.g.*, ECF No. 67-1, at 1 (defining Complaint, GrafTech, and Company).  All internal citations and quotations are omitted, and all emphases are added unless otherwise noted.

stages—because Plaintiff refuses to engage with the fact that there are various stages of GrafTech's manufacturing process and that GrafTech was clear in its public statements which stages of the manufacturing process were being done at St. Marys. Instead, Plaintiff selectively quotes portions of long documents to make it seem like GrafTech said that it was conducting every step of its manufacturing process at the St. Marys Plant, and then asserts that the case law Defendants cited is inapposite because the Former Engineering Lead's allegations related to the first three stages. *See e.g.*, ECF No. 70, at 12 n.5.

Plaintiff then argues that Defendants, by pointing to the full context of the alleged misstatements and the full course of disclosures about the launch of an automated pin machining line at St. Marys in the third quarter of 2021, have somehow created a dispute of fact or are raising some kind of "truth-on-the-market" defense (a term that does not appear in either the motion to strike or the motion to dismiss). But far from creating a dispute of fact, the full context of the disclosures reveals one thing: Defendants explicitly disclosed that the pin production line that came online was limited to machining pins. The case law Defendants cited in Section I of their Memorandum is therefore directly on point, demonstrating how allegations about unrelated issues can be properly struck. *See* ECF No. 67-1, § I (citing *McKinney v. Bayer Corp.*, 2010 WL 2756915, at \*1–2 (N.D. Ohio July 12, 2010); *Schlosser v. Univ. of Tenn.*, 2014 WL 5325350, at \*1, 3–5 (E.D. Tenn. Oct. 20, 2014)).

The Company's disclosures about the automated pin line began as early as February 2021, when GrafTech disclosed in its annual report on Form 10-K that "[w]e have begun a series of projects at our Monterrey and St. Marys facilities that will shift ***graphitization and machining of additional volume of semi-finished product*** from Monterrey to St. Marys." ECF No. 64-18 (2020 10-K at 7, 14). When Mr. Halford made the first of the allegedly misleading statements during the

August 2021 earnings call a few months later, it was within the context of the February 2021 disclosure that projects at St. Marys involved graphitizing and machining of semi-finished product.

The Company announced the automated pin line became operational during the next earnings call in November 2021. During that same earnings call, an analyst followed up on the newly-operational automated pin line and asked if St. Marys would be restarted "outside of the pin machining." ECF No. 64-7 (3Q21 Earnings Tr. at 7). Mr. Rintoul responded, explicitly referring to the new line as "this pin machining operation." *Id.* He would not commit to restarting any other operations at St. Marys. *Id.*

And finally, in August 2022 an analyst specifically asked Mr. Halford if GrafTech would consider "reopening St. Marys."[2] ECF No. 64-29 (2Q22 Earnings Tr. at 10). Mr. Halford's response leaves no room for any misconception as to the nature of the automated pin line GrafTech brought online in late 2021:

> [I]n response to your question on St. Mary's (sic), as you know, we've increased the amount of activity in the St. Mary's (sic) facility with the installation of the new pin machining line that complements the . . . [graphitization] activities that were already taking place there. And, I would point out that, I'm actually quite pleased with the St. Mary's (sic) team and their performance on commissioning and ramping up that equipment.

*Id.*

Plaintiff cannot credibly claim that the statements it challenges were about the entirety of GrafTech's six-step manufacturing process. GrafTech made the November 2021 and August 2022 disclosures in the middle of or just after the statements Plaintiff alleges were misleading, and both specified that the new pin line was a *machining* line. The 10-Ks during this period also made

---

[2] In the interim, in the Company's 2021 Form 10-K, filed in February 2022, GrafTech once again disclosed that "[i]n 2021, we shifted graphitization and machining of a portion of semi-finished products from Monterrey to St. Marys, Pennsylvania." ECF No. 64-26 (2021 10-K at 6).

3

known that projects at the St. Marys Plant involved only graphitizing and machining operations. Reading GrafTech's disclosures about the automated pin line as they were made, there is no doubt that Mr. Halford's updates about the pin production line were about machining operations. And Plaintiff does not suggest (and the allegations about the Former Engineering Lead do not suggest) that the machining line was not producing finished pins before the Monterrey shutdown. Because the Former Engineering Lead's allegations have nothing to do with pin machining or graphitizing, the Court should strike them.[3]

## II. THE COURT SHOULD REACH THE MERITS OF THE MOTION TO STRIKE.

Plaintiff insists that two procedural barriers prevent the Court from considering this Motion. Neither requires the Court to abstain.

The first supposed barrier is Rule 12(f)(2), which provides that "[t]he court may" strike allegations "on motion made by a party . . . before responding to the pleading." But no Defendant has filed an answer in response to the Complaint, so Rule 12(f)(2) permits the Motion. *See Tracfone Wireless, Inc. v. Access Telecom, Inc.*, 642 F. Supp. 2d 1354, 1361 (S.D. Fla. 2009) ("Plaintiff's claim that as an initial matter that this [m]otion is untimely under Rule 12(f) is without merit; despite the fact that this [m]otion was filed over four months after the [c]omplaint," and

---

[3] At the conclusion of this lawsuit, the Court should consider the allegations about the St. Marys Plant and the Former Engineering Lead as part of the mandatory Rule 11(b) review called for by the Private Securities Litigation Reform Act. *See* 15 U.S.C. § 78u–4(c)(1) (upon a final adjudication, a "court shall include in the record specific findings regarding compliance by each party and each attorney representing any party with each requirement of Rule 11(b) of the Federal Rules of Civil Procedure as to any complaint, responsive pleading, or dispositive motion"). Plaintiff does not dispute that its representatives failed to share a copy of the Complaint with the Former Engineering Lead before filing it so that he could make sure observations attributed to him were presented in fair context. "[I]t is reasonable to expect counsel, before filing the Complaint, to attempt to confirm with the witness the statements that counsel proposes to attribute to him and to assure that the Complaint is presenting these statements in fair context." *In re Millennial Media, Inc. Sec. Litig.*, 2015 WL 3443918, at *11 (S.D.N.Y. May 29, 2015).

after the defendants had filed motions to dismiss, "it was timely filed *before a responsive pleading to the [c]omplaint* was filed.").

Even if the Court were to determine the Motion would best have been filed earlier, and not after the Defendants filed their motions to dismiss (*see* ECF Nos. 64, 65, 66) (together, the "Pending Motions to Dismiss"), Plaintiff's timeliness argument skips over Rule 12(f)(1).  That subsection provides that a "court may" strike allegations "on its own."  Fed. R. Civ. P. 12(f)(1).  When faced with untimely motions to strike under Rule 12(f)(2), "courts have interpreted the authority to strike an insufficient defense sua sponte" under Rule 12(f)(1) "as permitting a district court to consider untimely motions to strike if doing so seems proper."  *Hill v. Herbert Roofing & Insulation, Inc.*, 2014 WL 234217, at *1 (E.D. Mich. Jan. 22, 2014).  "This judicial discretion is appropriate since in many instances a motion to strike [a] redundant, impertinent, immaterial, or scandalous matter is designed to eliminate allegations from the pleadings that might cause prejudice at some later point in the litigation."  *Id.* (quoting 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure Civil* §1380 (3d ed.)).  Here, if the Court finds the Motion untimely under Rule 12(f)(1), it should still reach its merits "[b]ecause the time limitations set out in Rule 12(f) should not be applied strictly when the motion to strike seems to have merit."  *Id.* at *2 (quoting Wright & Miller, *supra*, § 1380); *J&J Sports Prods., Inc. v. Lawson*, 2019 WL 1754744, at *2 (D.S.C. Apr. 19, 2019) ("[E]ven if Plaintiff's Motion to Strike is untimely, the court is still permitted to consider the Motion on its own.") (collecting cases).

Plaintiff's second supposed barrier, Rule 12(g)(2), also fails to withstand scrutiny.  Rule 12(g)(2) limits motions under Rule 12 by providing that "a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion."  Courts in the Sixth Circuit have long recognized

5

that "the purpose of Rule 12(g)(2) is to prevent the dilatory motion practice fostered by common law procedure and many of the codes whereby numerous pretrial motions could be made, many of them in sequence a course of conduct that often was pursued for the sole purpose of delay." *Blick v. Ann Arbor Pub. Sch. Dist.*, 2021 WL 10132110, at *2 (E.D. Mich. Sept. 30, 2021). And "a line of precedent exists in which the district courts have been willing to overlook a 12(g) defect where doing so would better serve the purpose underlying subdivision (g)." *Id.* (quoting *Davis v. City of Dearborn*, 2010 WL 3476242, at *4 (E.D. Mich Sept. 2, 2010) (collecting cases)). Under that line of precedent, "[w]here there is no evidence that a successive Rule 12 motion would create an unjust delay or facilitate an abuse in motion practice, courts have been willing to excuse 12(g) problems and address the merits[.]" *Id.*

Here, Plaintiff's Opposition to the Motion was due the same day as its Opposition to the pending Motions to Dismiss, and Defendants' Reply is due more than a month before their Reply in Support of the pending Motions to Dismiss. There can be no insinuation that the Motion was intended to delay proceedings or in fact will delay them.[4]

Rule 12(f)(1) also blocks Plaintiff's Rule 12(g)(2) argument. In *Blick*, the court was faced with a successive Rule 12 motion (there, for a more definite statement). *Id.* at *1. The court noted that it was permitted, "pursuant to its supervisory power," to "*sua sponte* order a more definite

---

[4] Far from supplementing Defendants' dismissal arguments, the Memorandum was an independent, standalone brief in support of a motion to strike immaterial and impertinent allegations related to the Former Engineering Lead from the Complaint. The Memorandum was explicit that whether the Former Engineering Lead allegations are stricken or not, the Complaint fails for the reasons stated in the Memorandum in Support of the Motion to Dismiss: "The arguments in the Motion to Dismiss stand on their own—including that the allegations attributed to the Former Engineering Lead do not show falsity or give rise to a strong inference of scienter, because they are unparticularized and unrelated to the graphitizing and machining steps of GrafTech's manufacturing process." ECF No. 67-1, at 4 n.1. It is rather Plaintiff that tries to supplement its arguments through its briefing on the Motion to Strike, relying heavily on its substantive arguments against dismissal.

6

statement." *See id.* at *2. In deciding to reach the merits rather than find that Rule 12(g)(2) procedurally barred the motion, the court "underscore[d] that it may *sua sponte* order a more definite statement." *Id.* The Court should reach a similar result here.

For the reasons discussed in Section I, the Motion has merit. And when such motions have merit, courts in the Sixth Circuit are inclined to reach the merits, rather than risk allowing litigation over a spurious issue to consume judicial and party resources.

## **CONCLUSION**

GrafTech's statements at issue in the Complaint have to do with only the last two steps of GrafTech's manufacturing process, and the Former Engineering Lead's observations have nothing to do with those steps. Because the Former Engineering Lead's observations have nothing to do with the challenged statements, the Court should strike paragraphs 58 through 63 of the Complaint and the associated references to supposed statements by the Former Engineering Lead in paragraphs 8, 213, and 214.

Dated: February 10, 2025

/s/ *Geoffrey J. Ritts*
Geoffrey J. Ritts (0062603)
Adrienne Ferraro Mueller (0076332)
Brittany N. Wilhelm (0096866)
Connor F. Lang (0100348)
JONES DAY
901 Lakeside Avenue
Cleveland, Ohio 44114-1190
Telephone: (216) 586-3939
gjritts@jonesday.com
afmueller@jonesday.com
bwilhelm@jonesday.com
clang@jonesday.com

7

Marjorie P. Duffy (0083452)
JONES DAY
325 John H. McConnell Blvd., Suite 600
Columbus, Ohio 43215
Telephone: (614) 469-3939
mpduffy@jonesday.com

*Attorneys for Defendants GrafTech International
Ltd., Marcel Kessler, Quinn Coburn, Timothy K.
Flanagan, and Jeremy S. Halford*

8

## CERTIFICATE OF SERVICE

A copy of the foregoing Reply in Support of the Motion of Defendants GrafTech, Kessler, Coburn, Flanagan, and Halford to Strike Allegations Regarding "Former Engineering Lead" was filed electronically this 10th day of February, 2025.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.    Parties may access this filing through the Court's system.

/s/ *Geoffrey J. Ritts*
Geoffrey J. Ritts (0062603)
JONES DAY
901 Lakeside Avenue
Cleveland, Ohio 44114-1190
Telephone:  (216) 586-3939
gjritts@jonesday.com

*One of the Attorneys for Defendants GrafTech*
*International Ltd., Marcel Kessler, Quinn Coburn,*
*Timothy K. Flanagan, and Jeremy S. Halford*