IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| JOHN C. PORTER, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>GRAFTECH INTERNATIONAL LTD., DAVID RINTOUL, QUINN COBURN, MARCEL KESSLER, TIMOTHY K. FLANAGAN, JEREMY S. HALFORD, BCP IV GRAFTECH HOLDINGS LP, BROOKFIELD CAPITAL PARTNERS LTD., and BROOKFIELD ASSET MANAGEMENT LTD.,<br><br>Defendants. | Case No. 1:24-cv-00154<br><br>Judge Donald C. Nugent |

**REPLY BRIEF IN FURTHER SUPPORT OF DEFENDANT DAVID RINTOUL'S
MOTION TO DISMISS**

Defendant David Rintoul[1] respectfully submits this reply brief in further support of his Motion to Dismiss (ECF No. 65, the "Motion") Plaintiff's Complaint.  Mr. Rintoul incorporates by reference and adopts the arguments contained in the reply brief filed by Defendants GrafTech, Marcel Kessler, Quinn Coburn, Timothy K. Flanagan, and Jeremy S. Halford (the "GrafTech Reply").  This reply brief supports the GrafTech Reply with additional points relevant to Plaintiff's claims against Mr. Rintoul.

**<u>PRELIMINARY STATEMENT</u>**

This case is similar to the numerous Rule 10b-5 cases dismissed under the stringent standards of the PSLRA and Rule 9(b), as Plaintiff cannot allege facts to surmount what this Circuit has described as an "elephant-sized boulder" blocking tenuous securities-fraud claims.  *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 461 (6th Cir. 2014).  The motions to dismiss demonstrated that the Complaint presents nothing more than a classic "fraud-by-hindsight" case, full of conjecture and supposition, thus necessitating dismissal.  Plaintiff's failure to confront the Complaint's shortfalls in his Omnibus Memorandum in Opposition to the Motions to Dismiss (ECF No. 69, the "Opposition," cited herein as "Opp.") only reinforces that conclusion.

Regarding the claims against Mr. Rintoul, Plaintiff ignores that Mr. Rintoul stepped down as GrafTech's CEO in June 2022 and cannot be liable for any alleged misstatements made after this time.  Even for statements made prior to June 2022, Plaintiff has not shown that any were false or misleading and has not rebutted the protection of the PSLRA safe harbor.  Moreover, Plaintiff has not established a strong inference (or any inference) of scienter as to Mr. Rintoul's actions, particularly with respect to his trades pursuant to his 10b5-1 trading plan, which were prescheduled and not suspicious.

---

[1] Capitalized terms have the same meaning as in Mr. Rintoul's Motion (ECF No. 65) unless otherwise stated.

The Supreme Court long ago recognized that the securities laws present a "danger of vexatious litigation." *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 740 (1975).  Thus, Plaintiff is required to clear a high hurdle at this stage: not just a short and plain statement of claim that a reader might deem *plausible*, but rather a particularized, factual account of circumstances that gives rise to a strong and cogent inference of fraud, at least as strong as any available, non-fraudulent inference.  The Complaint, which gets no boost from the Opposition, fails to clear that hurdle and should be dismissed in full, especially as to Mr. Rintoul.

## ARGUMENT

**A.      The Opposition's Silence Concedes that Mr. Rintoul is not Liable for Any Allegedly Misleading Company Statements Post-Resignation.**

Plaintiff's Opposition fails to address or acknowledge the Complaint's inability to differentiate Mr. Rintoul from other Defendants, particularly with respect to challenged statements made after he resigned as the Company's CEO.  It is undisputed that Mr. Rintoul resigned as the Company's CEO in June 2022 (FAC ¶ 22), yet Plaintiff purports to raise claims against Mr. Rintoul based on *all* of the statements included in the Complaint.  *See* FAC ¶¶ 261–62.  As established in the Motion, a corporate officer cannot be held liable for statements made after the officer ceases employment with the corporation.  *See* Rintoul Mem. at 4–5; *see also In re Jiangbo Pharms., Inc., Sec. Litig.*, 884 F. Supp. 2d 1243, 1260 (S.D. Fla. 2012), *aff'd sub nom. Brophy v. Jiangbo Pharms., Inc.*, 781 F.3d 1296 (11th Cir. 2015).[2]  Plaintiff's Opposition does not cite any case law to the contrary, let alone address Mr. Rintoul's argument established in the Motion.

By failing to address this argument, Plaintiff has waived it.  It is well settled that "[w]here a party fails to respond to an argument in a motion to dismiss, the [c]ourt assumes he concedes this

---

[2] *See also Off. Comm. of Unsecured Creditors of Integrated Health Servs., Inc. v. Elkins*, 2004 WL 1949290, at *8 (Del. Ch. Aug. 24, 2004) (holding directors cannot be held liable for actions by the board of directors after the director resigns).

point and abandons the claim." *USA Parking Sys., LLC v. Eastern Gateway Cmty. Coll.*, 2022 WL 312230, at \*5 (N.D. Ohio Feb. 1, 2022), *aff'd*, 2023 WL 8811690 (6th Cir. Dec. 20, 2023) (internal citation omitted).  The Court should, at a minimum, dismiss all claims asserted against Mr. Rintoul for any alleged misstatements by GrafTech made after June 2022 with prejudice.

**B.      Plaintiff Cannot Overcome Clear Sixth Circuit Precedent Regarding Optimistic Statements about GrafTech's Business.**

Plaintiff's argument that Mr. Rintoul falsely claimed the St. Marys Plant was a "peaking plant" fails because it was a forward-looking statement about how GrafTech *could* operate the plant in the future.  Such a statement was no more than a "loosely optimistic statement[]…that no reasonable investor could find [] important."  *In re Ford Motor Co. Sec. Litig., Class Action*, 381 F.3d 563, 571 (6th Cir. 2004).  Under well-settled Sixth Circuit case law, these "rosy affirmation[s] commonly heard from corporate managers" cannot qualify as misstatements.  *Indiana State Dist. Council of Laborers & Hod Carriers Pension & Welfare Fund v. Omnicare, Inc.*, 583 F.3d 935, 944 (6th Cir. 2009).  Plaintiff's Opposition presents two faulty assertions in response to the arguments raised in Mr. Rintoul's Motion and the GrafTech Memorandum.

First, Plaintiff contends that the Former Engineering Lead "confirmed" that the St. Marys Plant could not be considered a "peaking plant" when Mr. Rintoul made the statement.  Opp. at 32–33.  This contention collapses under basic scrutiny.  As noted in the GrafTech Reply, the Former Engineering Lead could not have possessed *any* information about Mr. Rintoul's contemporaneous knowledge or corporate intentions while making the "peaking plant" statement because the Former Engineering Lead was not hired until years later.  GrafTech Reply at 14.  Any purported reliance on such comments to suggest that Mr. Rintoul's statement was misleading or false is therefore misplaced.  *See City of Pontiac Gen. Emps.' Ret. Sys. v. Stryker Corp.*, 865 F. Supp. 2d 811, 824–25 (W.D. Mich. 2012); *see also Industriens Pensionsforsikring A/S v. Becton, Dickinson & Co.*,

2021 WL 4191467, at *25, n.19 (D.N.J. Sept. 15, 2021) (lack of "direct link" of confidential witness to speaker "weigh[s] on the plausibility of allegations sourced to [them].").

Plaintiff also attempts to argue that Mr. Rintoul's statement is not protected by the PSLRA safe harbor because such statement concerned "present and historical facts." Opp. at 33. This is incorrect, and Plaintiff's reliance on *Dougherty v. Esperion Therapeutics, Inc.*, 905 F.3d 971 (6th Cir. 2018) is equally flawed. The Sixth Circuit has explained that "[t]he critical inquiry in determining whether a statement is forward-looking is whether its veracity can be determined at the time the statement is made." *Id.* at 983 (finding that statement about what FDA had already done was not forward-looking).

In contrast, Mr. Rintoul's prediction about the St. Marys Plant being a "peaking plant" was inherently forward-looking, as it pertained to the plant's ***future*** operational capabilities and potential. *See* Opp. at 32 (interpreting the "peaking plant" comment as communicating that "GrafTech ***could*** 'ramp up production at St. Marys ***if required by the market***.'") (emphasis added). Per the *Dougherty* test, nothing about that statement is an "observation of a historical fact," "the truth or falsity of [which] could have been ascertained" at the time Mr. Rintoul made the statement in February 2019. *Dougherty*, 905 F.3d at 983–84. Rather, the "peaking plant" statement is a textbook, inactionable forward-looking statement, replete with forward-looking language. *See, e.g.*, FAC ¶ 88 ("We will ramp up"; "we will operate"; "we will use"; "we expect"). Thus, it falls squarely within the PSLRA's safe harbor for forward-looking statements. Plaintiff's attempts to reframe Mr. Rintoul's forward-looking statement are unavailing and do not withstand scrutiny.

**C.      Plaintiff Does Not Establish a Strong Inference of Scienter as to Mr. Rintoul.**

Plaintiff acknowledges (Opp. at 18–19, 47–48) that a securities fraud complaint must satisfy the additional pleading requirements of Federal Rule of Civil Procedure 9(b) and the PSLRA, but nevertheless fails to plead facts sufficient to infer scienter on the part of Mr. Rintoul.

4

*1.  Plaintiff fails to plead scienter on a "Defendant-by-Defendant" basis.*

Plaintiff cannot rely on collective or group pleading when pleading allegations of scienter. "In a case involving multiple defendants, [a] plaintiff[] must plead circumstances providing a factual basis for scienter (when required) for each defendant; guilt by association is impermissible." *SEC v. Lee*, 720 F. Supp. 2d 305, 321 (S.D.N.Y. 2010) (internal citation omitted). As noted in the Motion, Plaintiff makes no effort to establish scienter on a defendant-by-defendant basis but instead relies on so-called "group pleading," which is directly contrary to the requirements of the PSLRA and Sixth Circuit precedent. *See Teamsters Loc. 237 Welfare Fund v. ServiceMaster Glob. Holdings, Inc.*, 83 F.4th 514, 526 (6th Cir. 2023) ("We do, however, 'analyze scienter on a defendant-by-defendant' basis."). Plaintiff's Opposition continues to rely upon Complaint references to the "Individual Defendants" and "Defendants" collectively, further validating Mr. Rintoul's argument.

*2.  No Plausible Allegation of Insider Trading Has Been Presented.*

Plaintiff's attempt to reframe an unremarkable 10b5-1 plan as evidence of scienter, Opp. at 63–64, fails because it rests on nothing more than coincidental temporal proximity to a statement Plaintiff erroneously believes is actionable. First, as argued more fully in the GrafTech Memorandum and GrafTech Reply, Mr. Halford's statement about pin production at St. Mary's was neither false nor misleading, and therefore the fact that Rintoul executed a 10b5-1 plan four days after that statement is of no moment. Second, Plaintiff's reliance on case law inferring scienter where trading is "suspiciously timed in proximity to the false statements" (Opp. at 64) fails when applied to the facts. Plaintiff alleges that Halford made an allegedly false statement in August 2021, and Rintoul entered into a 10b5-1 plan through which he made a single trade in *November*, three months later. FAC ¶ 228. If, as Plaintiff implies, Rintoul was seeking to profit

5

from Halford's misleading statement, setting a trade three months in the future is hardly quick.

In any event, Plaintiff's cited case law is inapposite. *In re SmarTalk Teleservices, Inc. Sec. Litig.*, 124 F. Supp. 2d 527 (S.D. Ohio 2000) is distinguishable because the purported insider **did not** execute a 10b5-1 trading plan prior to selling any of his stock. *Id.* at 538, 546–47. The court thus did not address the fact that 10b5-1 trading plans routinely support an inference that such stock sales are *not suspicious or unusual*. *See* Rintoul Mem. at 9–10 (collecting cases). *Willis v. Big Lots, Inc.*, 2016 WL 8199124 (S.D. Ohio Jan. 21, 2016) is similarly unavailing because the complaint contained far more particularized facts to support an inference of scienter than the plaintiff merely executing a 10b5-1 plan. *See id.* at *33. For example, the plaintiff in *Willis* alleged that *seventeen* employees sold stock during the class period, and numerous of the employees sold stock **outside of their 10b5-1 trading plans**. *See id.* No such allegations are present here.

*In re Lululemon* is particularly instructive here. There, the plaintiff alleged that the founder's stock sales were "suspicious in timing," occurring shortly after the former CEO made various allegedly fraudulent misstatements. *In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 569–70 (S.D.N.Y. 2014), *aff'd*, 604 F. App'x 62 (2d Cir. 2015). Despite the timing, the court swiftly rejected this theory, reasoning not only that all sales were made pursuant to a 10b5-1 plan, but also that the complaint included no allegations that the founder had material non-public information when he executed the plan. *See id.* at 584–85. Plaintiff's Complaint should be dismissed for the same reasons.

**<u>CONCLUSION</u>**

For the foregoing reasons, and those set forth in Mr. Rintoul's Motion, Mr. Rintoul requests that this Court dismiss all claims against Mr. Rintoul with prejudice.

6

/s/ *Benjamin D. Schuman* (admitted *pro hac vice*)
Brett Ingerman (admitted *pro hac vice*)
Benjamin D. Schuman (admitted *pro hac vice*)
DLA PIPER LLP (US)
650 S. Exeter St.
Suite 1100
Baltimore, MD 21202
brett.ingerman@us.dlapiper.com
ben.schuman@us.dlapiper.com

Emily Honsa Hicks (0086090)
DLA PIPER LLP (US)
500 8th Street NW
Washington, DC 20004
Telephone: (202) 799-4514
emily.honsahicks@us.dlapiper.com

*Attorneys for Defendant David Rintoul*

7